LENK, J.
**132 The plaintiff, John Doe No. 23656 (Doe), appeals from his classification as a level two sex offender. For the reasons that follow, we affirm the classification.[1]
1. Background. In 1980, when he was thirty years old, Doe pleaded guilty to two counts of rape, G. L. c. 265, § 22, and one count of assault with intent to rape, G. L. c. 265, § 24, stemming from three separate incidents involving three different women. Each of the women was a stranger to Doe. He was sentenced to three concurrent terms of from sixteen to eighteen years in State prison, which he served until his release in 1996.
Shortly thereafter, when Doe was forty-seven years old, he was convicted of one count of indecent assault and battery on a person over the age of fourteen, G. L. c. 265, § 13H, and one count of open and gross lewdness and lascivious behavior, G. L. c. 272, § 16. He was sentenced to from two and one-half to three years in State prison on the second charge, and from four and one-half to five years from and after on the first charge. He completed serving this sentence in 2005.
In 2007, Doe was adjudicated a sexually dangerous person (SDP) and civilly committed to the Massachusetts Treatment Center. In 2012, he was found no longer sexually dangerous and was released.
In July 2010, prior to his release from civil commitment, the Sex Offender Registry Board (SORB) notified Doe of its intent to classify him as a level three (high risk) sex offender. Doe requested an evidentiary hearing. Following that hearing, in March 2011, Doe was classified as a level three sex offender. He sought judicial review, and prevailed in his appeal; the matter was remanded for a new hearing. A second hearing was conducted in June 2015, with the same result. Doe again *783 sought judicial review. While review was pending, we decided Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298, 41 N.E.3d 1058 (2015) ( Doe No. 380316 ), a case in which we heightened the relevant standard of proof to "clear and convincing evidence." Accordingly, Doe was granted a third de novo hearing.
In a written decision following the June 2016 hearing, Doe was classified as a level two (moderate risk) sex offender. Doe sought **133 judicial review under G. L. c. 30A, § 14, and a judge of the Superior Court affirmed SORB's classification. Doe appealed to the Appeals Court, and we transferred the case to this court on our own motion.
2. Sex offender registration law. In 1999, the Legislature enacted a set of statutes establishing a State-wide sex offender registry. See G. L. c. 6, §§ 178C - 178Q, inserted by St. 1999, c. 74, as amended by St. 2003, c. 26, § 12. The registry is "an extensive statutory registration scheme for sex offenders designed to protect the public from the danger of recidivism posed by sex offenders and to aid law enforcement officials in protecting their communities" (quotations and citation omitted). See Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 196, 102 N.E.3d 409 (2018) ( Noe ). Individuals who have been convicted of sex offenses, as defined by G. L. c. 6, § 178C, are required to register upon release from custody, where applicable, or on notification of an obligation to register. See Noe, supra, citing G. L. c. 6, § 178E (a ), (c ).
Upon initial registration, individuals are classified into one of three "levels of notification." Moe v. Sex Offender Registry Bd., 467 Mass. 598, 601, 6 N.E.3d 530 (2014). Classifications are made "on an individualized basis according to [each individual's] risk of reoffense and degree of dangerousness." St. 1999, c. 74, § 1. Under SORB's regulations, three determinations must be made: "(a) the offender's risk of reoffense; (b) the offender's dangerousness as a function of the severity and extent of harm the offender would present to the public in the event of reoffense; and (c) in consideration of the foregoing, whether and to what degree public access to the offender's personal and sex offender information ... is in the interest of public safety." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Board, 482 Mass. 643, 650, 126 N.E.3d 939 (2019) ( Doe No. 496501 ), quoting 803 Code Mass. Regs. § 1.20(2) (2016).
Where SORB determines that the "risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability [of registration information]," it assigns a sex offender a level one designation. See G. L. c. 6, § 178K (2) (a ). Where the risk of reoffense is "moderate" and the degree of dangerousness is "such that a public safety interest is served by public availability of registration information," SORB assigns a level two designation. G. L. c. 6, § 178K (2) (b ). Where the risk of reoffense is "high" and the **134 public safety interest merits "active dissemination" of registration information, SORB assigns an offender a level three designation. G. L. c. 6, § 178K (2) (c ). Although neither the statute nor SORB's regulations specify the "degree of dangerousness" required for each classification, we have determined that a "moderate" degree of dangerousness is required for a level two classification. See Doe No. 496501, 482 Mass. at 651, 126 N.E.3d 939.
In making a classification determination, SORB is guided by a nonexhaustive list of twelve statutory risk factors. See G. L. c. 6, § 178K (1) (a )-(l ). SORB has promulgated *784 specific guidelines for the application of each statutory factor, consisting of thirty-eight relevant aggravating and mitigating considerations. See 803 Code Mass. Regs. § 1.33 (2016) (guidelines). SORB prepares a recommended classification for every sex offender. See G. L. c. 6, § 178L (1). Before a classification is made final, an individual has the opportunity to request an evidentiary hearing before a hearing examiner. G. L. c. 6, § 178L. Thereafter, an individual is entitled seek judicial review in the Superior Court of a final classification. See G. L. c. 6, § 178M ; G. L. c. 30A, § 14.
A reviewing court may set aside or modify a classification decision if it is "in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." See Doe No. 496501, 482 Mass. at 649, 126 N.E.3d 939, citing G. L. c. 30A, § 14 (7). The individual bears the burden of proving the error in the board's decision. See Doe No. 380316, 473 Mass. at 300, 41 N.E.3d 1058.
3. Discussion. On appeal, Doe raises three issues with respect to his final classification. Doe argues that the hearing examiner improperly disregarded the testimony of his expert witness in evaluating the evidence; that there was insufficient evidence to classify him as a level two sex offender; and that, even if he could be classified as a level two sex offender, his registration information should not be made available on the Internet.
a. Expert testimony. Doe maintains that the hearing examiner improperly discredited the testimony of Doe's expert witness because the expert did not consider each of the risk factors relevant to SORB's determination.
In 2015, Dr. Leonard Bard, a psychologist, evaluated Doe to assess his risk of reoffense. Bard testified at Doe's 2015 hearing, where he was qualified as an expert witness. During the 2016 hearing, before the same hearing examiner, Doe submitted Bard's earlier "Forensic Psychological Evaluation" and the transcript of his 2015 testimony. Bard opined that Doe posed a low risk of **135 reoffending, primarily due to Doe's advanced age.[2]
We have recognized that, as some of the SORB risk factors relate to an offender's mental or physical condition, "the accuracy of the classification decision may well be enhanced by the addition to the evidentiary record of additional expert evidence in the form of testimony or reports." See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 773, 897 N.E.2d 1001 (2008).[3] Where offered by the individual, a hearing examiner must consider testimony "from a licensed mental health professional that discuss psychological and psychiatric issues, including major mental illness, as they relate to the offender's risk of reoffense." See 803 Code Mass. Regs. § 1.33(35). See also 803 Code Mass. Regs. § 1.04(4).
*785 Bard's analysis deviated from a full application of all the risk factors delineated in SORB's guidelines. Whereas the guidelines assist SORB in determining both an offender's "risk of reoffense" as well as his or her "degree of dangerousness posed to the public," 803 Code Mass. Regs. § 1.33, Bard testified that his "focus tends to be more on the likelihood or the risk of somebody offending rather than the particular level of dangerousness." Accordingly, he did not examine certain factors that focused solely on the degree of dangerousness.[4]
That Bard did not focus on "degree of dangerousness" factors is not disqualifying. An expert need not examine every factor relevant to a fact finder's determination in order to provide helpful testimony. Indeed, parties regularly employ expert witnesses to testify about some, but not all, elements of a claim, **136 charge, or defense. See, e.g., Commonwealth v. Zeininger, 459 Mass. 775, 791, 947 N.E.2d 1060, cert. denied, 565 U.S. 967, 132 S.Ct. 462, 181 L.Ed.2d 301 (2011) (expert testified only as to breathalyzer evidence); Renzi v. Paredes, 452 Mass. 38, 42-43, 890 N.E.2d 806 (2008) (experts called to testify variously regarding standard of care, causation, or amount of damages); Bernier v. Boston Edison Co., 380 Mass. 372, 384, 403 N.E.2d 391 (1980) (expert in negligence case testified only as to speed of vehicle). Cf. Commonwealth v. McHoul, 372 Mass. 11, 14, 360 N.E.2d 316 (1977) (in determination of sexual dangerousness, psychiatrist need not testify as to each element).[5]
Moreover, Bard's assessment of the risk of reoffense, alone, could have been dispositive. Where the risk of reoffense is determined to be low, a hearing examiner cannot determine that an individual is a level two sex offender, regardless of the degree of dangerousness.[6] Accordingly, it would not have been appropriate to disregard Bard's testimony on the ground that he did not examine Doe's degree of dangerousness. Unlike the fact finder at a trial, a hearing examiner is not "free to accept or reject all or part of the expert testimony" simply because it did not address all of the factors. Contrast Charrier v. Charrier, 416 Mass. 105, 112, 616 N.E.2d 1085 (1993) (judge or jury "not bound to accept the opinion of an expert witness even if it is uncontradicted");
*786 Commonwealth v. Matthews, 406 Mass. 380, 391, 548 N.E.2d 843 (1990) (jury could disregard expert testimony).
Rather, an agency must "explain[ ] on the record its reasons for rejecting portions of [an expert's] testimony." See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 694, 978 N.E.2d 55 (2012). See Robinson v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 634, 639, 482 N.E.2d 514 (1985) (where "there is uncontradicted testimony concerning a **137 subject which is beyond the common knowledge and experience of the finder of fact, that testimony may not be rejected without a basis for such rejection in the record"). Cf. Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 625-626, 925 N.E.2d 533 (2010) (error for board to disregard mitigating evidence). See also New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 470, 420 N.E.2d 298 (1981) (board must have "explicit and objectively adequate reason" to reject uncontradicted evidence [citation omitted] ). That an expert's testimony spoke to some, but not all, of the relevant considerations is not an "objectively adequate reason" to reject the testimony.
Yet, the hearing examiner did not disregard Bard's testimony. To the contrary, in her thirty-five page written decision, the hearing examiner did indeed consider Bard's analysis.[7] While the examiner found the expert's testimony useful in some respects,[8] she declined to "wholly adopt" the expert's conclusions.
The hearing examiner found and relied upon the presence of "other regulatory risk factors," which the expert did not consider aggravating, including "adjudication as a [sexually dangerous person,] treatment refusal, multiple [v]ictims, high level of physical contact, and victim impact [statements]." By assigning greater weight to these additional factors than did Bard, the hearing examiner reached a different conclusion. Doe is not entitled to a guarantee that SORB will reach the same conclusion as his expert; he is entitled only to careful consideration of his expert's testimony. See Doe, Sex Offender Registry Bd. No. 10800, 459 Mass. 603, 637, 947 N.E.2d 9 (2011) ( Doe No. 10800 ) ("The opinion of a witness testifying on behalf of a sex offender need not be accepted by the hearing examiner even where the board does not present any contrary expert testimony"). See also Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 764, 857 N.E.2d 473 (2006). Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 85 Mass. App. Ct. 1, 11, 4 N.E.3d 1264 (2014) ("Doe is entitled to consideration, **138 not acceptance, of the expert testimony").
Significantly, the hearing examiner also appears to have expressed some skepticism about Bard, wholly unrelated to his selection of risk factors. She noted that Bard "had no memory" nor "any records" of evaluating Doe prior to 2015, but that *787 record evidence demonstrated that Bard did, in fact, evaluate Doe in 1987. At the time, Bard had "opined that [Doe] did not meet criteria as a sexually dangerous person," but Doe "subsequently reoffended in 1997, within one year after his release to the community." The hearing examiner was entitled to consider this evidence in determining how much weight to assign the expert's ultimate conclusions. There was no error in the treatment of the expert's testimony.
b. Sufficiency of the evidence. Doe contends that the weight of the evidence was insufficient to support a classification as a level two sex offender.
A level two classification requires a finding, by clear and convincing evidence, that "(1) the offender's risk of reoffense is moderate; (2) the offender's dangerousness is moderate; and (3) a public safety interest is served by Internet publication of the offender's registry information." Doe No. 496501, 482 Mass. at 656, 126 N.E.3d 939. See G. L. c. 6, § 178K (2) (b ). Each element must be established by this standard. See Doe No. 496501, supra.[9] Establishing facts by clear and convincing evidence is "a greater burden than proof by a preponderance of the evidence, but less than the proof beyond a reasonable doubt required in criminal cases." Doe No. 380316, 473. Mass. at 309.
In reviewing a SORB classification, we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). Credibility determinations and factual disputes are the province of the board or hearing examiner that heard the evidence. Doe No. 10800, 459 Mass. at 633, 947 N.E.2d 9. The **139 hearing examiner has discretion to determine how much weight to ascribe to each factor under consideration. See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110, 18 N.E.3d 1081 (2014).
Here, the hearing examiner considered a wide range of factors that bore on Doe's risk of reoffense and degree of dangerousness, as well as the utility of public availability of Doe's information, as set forth in G. L. c. 6, § 178K (1), and 803 Code Mass. Regs. § 1.33.[10] In weighing the balance of the aggravating and mitigating factors, the examiner determined that a level two classification was appropriate.
As a preliminary matter, we note that the hearing examiner's analysis considered, in part, Doe's refusal to receive non-confidential sex offender treatment. As discussed infra, such consideration was improper in light of our decision in Commonwealth v. Hunt, 462 Mass. 807, 820, 971 N.E.2d 768 (2012). Having removed the refusal to receive nonconfidential treatment from consideration, we analyze the remainder of the hearing examiner's classification decision. Ultimately, we determine that there was substantial evidence to support *788 a level two sex offender classification by clear and convincing evidence.[11]
i. Nonconfidential sex offender treatment. In the context of civil commitment proceedings to determine whether an individual is sexually dangerous, we have held that it is error to consider the refusal to obtain nonconfidential treatment as an aggravating factor, where that treatment involved admitting to unlawful behavior. See Hunt, 462 Mass. at 820, 971 N.E.2d 768.
"Where, as here, a sex offender is required to waive the confidentiality of statements made in treatment to a sex offender therapist in order to obtain treatment, the sex offender is faced with a problematic choice. If he [or she] agrees to waive confidentiality and seek treatment, all that he [or she] admits during treatment, including past sexual offenses, may be used against him [or her] ... [including] to prosecute him [or her] for offenses that have yet to be **140 adjudicated.... If he [or she] avoids incriminating himself [or herself] by refusing to waive confidentiality, he [or she] is denied any sex offender treatment, and his [or her] refusal to enter treatment may be admitted in evidence and used by the qualified examiners and the Commonwealth's expert witnesses ... to support their opinion that he [or she] is [a sexually dangerous person]."
Id. at 811, 971 N.E.2d 768.
In Hunt, supra at 810, 971 N.E.2d 768, the individual was required to sign an agreement that "nothing he said or disclosed in treatment or in discussions with his therapist would be confidential." See Ainsworth v. Risley, 244 F.3d 209, 215 (1st Cir. 2001), vacated sub nom. Ainsworth v. Stanley, 536 U.S. 953, 122 S.Ct. 2652, 153 L.Ed.2d 829, aff'd on reh'g, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999, 123 S.Ct. 1908, 155 L.Ed.2d 825 (2003) ("The program's requirement that participants admit to their crimes is widely believed to be a necessary prerequisite to successful treatment"). Here, too, Doe's treatment options required a waiver of confidentiality. As a consequence, admissions Doe made during treatment later might have been used as evidence against him. Not only is "sex offender treatment without confidentiality ... laden with risk for the sex offender," but also "the relationship of trust between therapist and sex offender [is] compromised" where the individual seeking treatment cannot speak honestly to his or her therapist. See Hunt, 462 Mass. at 818, 971 N.E.2d 768. Under these conditions, Doe declined to participate in the treatment.
Pursuant to G. L. c. 6, § 178K (1), factors "relevant to the risk of reoffense" include:
"(h ) the sex offender's participation in sex offender treatment and counseling while incarcerated or while on probation or parole and his response to such treatment or counseling."
Expanding upon this provision, SORB guidelines state that offenders who "refuse to participate in" treatment present an "increased risk of reoffense and degree of dangerousness." See 803 Code Mass. Regs. § 1.33(24).
SORB maintains that the refusal of treatment is indicative of an increased risk of reoffense.[12] We have determined, *789 however, that where, as here, "sex offender treatment is conditioned on a waiver **141 of confidentiality, refusal of treatment alone is insufficient to support an inference that the [individual] does not want to be treated." See Hunt, 462 Mass. at 819, 971 N.E.2d 768.[13] "If the Commonwealth were to provide sex offender therapy without requiring a waiver of confidentiality, then this inference arising from refusal would be fair and reasonable." Id. An inference that does not fairly and logically follow at an SDP hearing fares no better at a SORB hearing. We therefore extend the determination we made in Hunt to SORB classification proceedings, deciding that the refusal of nonconfidential treatment cannot be used to infer an unwillingness to be treated.
It is no answer, as SORB suggested at argument before us, that no "liberty interests" are at stake in a SORB hearing. A sex offender's risk classification level "has dramatic consequences for his liberty and privacy interests," including, but not limited to, "affirmative reporting requirements, as well as the possibility of extended incarceration for failing to meet those requirements." Doe No. 380316, 473 Mass. at 311, 41 N.E.3d 1058. "We recognize that the potential consequences arising from a [criminal] conviction" -- or, in the civil context, an SDP proceeding -- "are greater than those arising from classification as a sex offender ... but a constitutionally protected liberty interest is at issue in both proceedings." Doe, Sex Offender Registry Bd. No. 914 v. Sex Offender Registry Bd., 460 Mass. 336, 340, 951 N.E.2d 344 (2011). See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 596, 999 N.E.2d 478 (2013) ("sex offender registration law implicates constitutionally protected liberty and privacy interests"). See also Doe No. 10800, 456 Mass. at 624 n.8, 925 N.E.2d 533.
Because the treatment offered to Doe was not confidential, his **142 refusal to participate does not support an inference that he did not want to be treated. On the contrary, Doe "explained that he is not against treatment," but "stated the reasons for his refusal were related to the legal appeal of his case"; "[he] testified that treatment at [the treatment center] is not confidential and information regarding treatment participating could be used against individuals during Section 9 hearings." Insomuch as the hearing examiner relied upon Doe's refusal to engage in nonconfidential treatment to infer his unwillingness to engage in treatment, such an inference was improper. We therefore excise from the hearing examiner's determination any reliance on *790 803 Code Mass. Regs. § 1.33(24),[14] and we review what remains to determine whether substantial evidence existed to classify Doe as a level two sex offender.
ii. Risk of reoffense. The hearing examiner found several factors present that indicate a "high risk of reoffense," including Doe's several medical diagnoses for paraphilia,[15] 803 Code Mass. Regs. § 1.33(1) ; his commission of an additional offense after an extensive period of incarceration and civil commitment, 803 Code Mass. Regs. § 1.33(2) ; and his prior adjudication as a sexually dangerous person, 803 Code Mass. Regs. § 1.33(5). She also found the presence of numerous "risk-elevating" factors related to Doe's governing offenses, including that his offenses were committed against victims who were strangers to him, 803 Code Mass. Regs. § 1.33(7) ; his use of violence in committing those offenses, 803 Code Mass. Regs. § 1.33(8) ; his commission of the offenses in public locations, 803 Code Mass. Regs. § 1.33(16) ; and that his offenses were committed against multiple separate victims, **143 803 Code Mass. Regs. § 1.33(22). She also identified several "risk-elevating" factors unrelated to Doe's governing offenses, including his prior probation and parole violations, 803 Code Mass. Regs. § 1.33(10), (13), and violence unrelated to sexual assaults, 803 Code Mass. Regs. § 1.33(11). The hearing examiner did not merely list these factors; she provided a detailed account of the evidence she considered and an explanation of the relative weight that she assigned each factor.[16]
The hearing examiner also gave due consideration to the mitigating factors put forth by Doe, including his advanced age, 803 Code Mass. Regs. § 1.33(30) ; strong social support systems, 803 Code Mass. Regs. § 1.33(33) ; and stability in the community, 803 Code Mass. Regs. § 1.33(34) ; as well as the psychological evaluations he submitted, 803 Code Mass. Regs. § 1.33(35).[17] In weighing the balance of the aggravating and mitigating factors, the examiner determined that Doe's risk of reoffense was "moderate."
*791 Doe does not dispute the facts underlying these considerations. Rather, he contends that the hearing examiner did not properly balance the aggravating factors against the mitigating factors. He argues that the aggravating factors largely were present "decades ago," and merited little weight, whereas the mitigating factors played a greater role in his life at the time of classification.
Doe's progress toward a stable and productive life since his discharge from civil commitment is commendable.[18] Yet "[o]ur review of a hearing examiner's decision does not turn on whether, faced with the same set of facts, we would have drawn the same **144 conclusion, but only whether a contrary conclusion is not merely a possible but a necessary inference" (citation omitted). Doe, Sex Offender Registry Bd. No. 3839 v. Sex Offender Registry Bd., 472 Mass. 492, 500-501, 35 N.E.3d 710 (2015) ( Doe No. 3839 ). See Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 231, 928 N.E.2d 939 (2010) ("A court may not displace an [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" [citation omitted] ). Regardless of whether we would have reached the same conclusion, there was substantial evidence to support the hearing examiner's determination that Doe posed a "moderate" risk of reoffense.
iii. Degree of dangerousness. The hearing examiner did not make an explicit determination, supported by separate findings, that Doe posed a moderate degree of dangerousness. See Doe No. 496501, 482 Mass. at 656-657, 126 N.E.3d 939 (explicit and separate findings required).[19] Nonetheless, we determine that, in this case, more detailed findings are not necessary to our review. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 657 n.4, 126 N.E.3d 939 ("whether SORB's existing findings are sufficiently explicit to enable proper review is a question best left to the reviewing court"). Although the findings regarding risk of reoffense and degree of dangerousness are intermingled in the hearing examiner's decision, we have little difficulty parsing them. The hearing examiner's analysis of each factor was meticulous, and indicates the presence of sufficient factors to merit a determination that Doe posed a "moderate" degree of dangerousness.[20]
"In determining whether an individual poses a moderate degree of dangerousness at the time of evaluation, a hearing examiner must consider 'the severity and extent *792 of the harm the offender would present to the public in the event of reoffense.' " Doe No. 496501, 482 Mass. at 659, 126 N.E.3d 939, quoting **145 803 Code Mass. Regs. § 1.20(2)(b) (2016). Doe's governing offenses included several instances of using physical violence to force victims to perform sexual acts.
The hearing examiner accounted for Doe's high level of physical contact during the commission of his offenses, 803 Code Mass. Regs. § 1.33(19). See Doe No. 496501, 482 Mass. at 659, 126 N.E.3d 939 ("contact offenders" more dangerous than "noncontact offenders"). She also considered Doe's commission of offenses against four different victims, 803 Code Mass. Regs. § 1.33(22) ; the fact that the victims were strangers to Doe, 803 Code Mass. Regs. § 1.33(7) ; and Doe's use of violence both related and unrelated to sexual assaults, 803 Code Mass. Regs. § 1.33(8), (11). The hearing examiner also considered Doe's probation and parole violations, 803 Code Mass. Regs. § 1.33(10), (13), as well as several victim impact statements submitted by one of Doe's victims, see 803 Code Mass. Regs. § 1.33(38). Finally, the hearing examiner weighed Doe's prior adjudication as a sexually dangerous person, 803 Code Mass. Regs. § 1.33(5), which is considered a "high risk" factor under the guidelines.
In their totality, the factors present were sufficient to support a determination that Doe's degree of dangerousness was "moderate." Contrast Doe No. 496501, 482 Mass. at 659-660, 126 N.E.3d 939 ("an individual is generally unlikely to pose a moderate degree of dangerousness ... where his or her risk of reoffense relates only to noncontact offenses that do not put a victim in fear of bodily harm by reason of a contact sex offense").
iv. Internet publication. The hearing examiner explicitly determined that the public availability of Doe's personal information would serve the interest of public safety. She did not, however, make separate and explicit findings in support of this element. Nonetheless, because "the underlying facts of the case ... so clearly dictate the appropriate classification level," we do not exercise our discretion to remand for further findings on this element. See Doe No. 496501, 482 Mass. at 657 n.4, 126 N.E.3d 939.
As discussed, the hearing examiner found that Doe posed a moderate risk of committing new offenses. Doe's prior offenses were committed against strangers in public locations. In one instance, Doe's victim was a minor. Accordingly, public availability of Doe's name, photograph, address, and offenses would enable members of the public to take precautions to avoid encountering Doe in situations in which the members of the public are vulnerable. It would also enable residents, including those **146 with minor children, to determine whether Doe lives in their neighborhood, which might have an impact on their decisions regarding the supervision of their children.
Of course, once Doe's information is published on the Internet, it will become nearly impossible later to remove. See Moe, 467 Mass. at 605, 6 N.E.3d 530 ("once a sex offender's registry information is published on SORB's Web site, it is likely to be republished on other Web sites that are not controlled by SORB that publicly identify sex offenders"). Yet, aware of the consequences of Internet publication, the hearing examiner determined that, on balance, such a measure was necessary for the protection of the public. We cannot say that a contrary conclusion was required by the evidence. See Doe No. 3839, 472 Mass. at 501, 35 N.E.3d 710.
Because we determine that there was substantial evidence to support each element *793 by clear and convincing evidence, we conclude that there was no error in the hearing examiner's classification of Doe as a level two sex offender.
c. Exemption from Internet publication requirement. Doe maintains that, even if he is classified as a level two sex offender, his registration information should not be subject to Internet publication.
Prior to 2013, the sex offender registration law required publication on the Internet of registry information for level three sex offenders. In 2013, the Legislature amended the law to require publication also for level two sex offenders. See St. 2013, c. 38, §§ 7, 9.[21] We determined in Moe, 467 Mass. at 616, 6 N.E.3d 530, that the requirement did not apply retroactively to level two sex offenders classified on or before July 12, 2013, the effective date of the amendment. In so deciding, we stated:
"What shifts the balance in favor of the plaintiff class is that retroactive application would require Internet publication of the registry information of persons who SORB implicitly concluded were not so dangerous that their information needed to be published on the Internet to protect the public safety, and who SORB may have classified as level one **147 offenders if SORB had known that Internet publication would be a consequence of a level two classification."
Moe, supra at 615-616, 6 N.E.3d 530. Considering also the rights of those individuals classified as sex offenders, we observed that "at least some of these offenders 'acted in reasonable reliance upon the previous state of the law' in choosing not to challenge their level two classifications specifically because such classifications did not subject them to Internet publication of their registry information." Id. at 616, 6 N.E.3d 530, quoting Leibovich v. Antonellis, 410 Mass. 568, 578, 574 N.E.2d 978 (1991).
Accordingly, we determined that application of the amendments to individuals classified prior to July 12, 2013, was an unconstitutional violation of due process. Moe, 467 Mass. at 615, 6 N.E.3d 530. We stated explicitly, however, that "[n]othing in this order affects the ability of SORB to publish on the Internet the registry information of any individual who was given a final classification as a level two sex offender after July 12, 2013." Id. at 616, 6 N.E.3d 530.[22] After that date, hearing examiners and classified individuals alike were aware that a level two classification would come with the consequence of Internet publication.
Doe received his final classification as a level two sex offender in September 2016. At the time of that classification, SORB relied upon the belief that so classifying *794 him would expose Doe's registration information on the Internet. Doe, in turn, did not fail to challenge his classification in reliance on an understanding that Internet publication would not apply to him. See Moe, supra at 614-615, 6 N.E.3d 530. Because the date of his final classification falls after July 12, 2013, the requirement of Internet publication applies to Doe.[23] See Doe No. 380316, 473 Mass. at 315, 41 N.E.3d 1058 (upholding Internet **148 publication of level two sex offender classified after effective date).
Judgment affirmed.

We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and by Laurie Guidry and Ryan Panaro.

Doe was sixty-five years old at the time of his evaluation in 2015, and sixty-nine when the matter came before this court.

"[T]he evidentiary classification hearing may be conducted by an individual board member or hearing examiner who is not required to have any [medical] expertise or even training." See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 773-774, 897 N.E.2d 1001 (2008). "It is in everyone's best interests -- including the best interests of sex offenders themselves -- that the board work from accurate, up to date, and thorough information." Id. at 774, 897 N.E.2d 1001, quoting Roe v. Attorney Gen., 434 Mass. 418, 430, 750 N.E.2d 897 (2001). See id. at 781, 897 N.E.2d 1001 (Spina, J., concurring) ("Agency expertise is no substitute for necessary evidence").

Certain SORB factors concern both risk of reoffense and degree of dangerousness, while others address only one or the other. For example, factor 19, "Level of Physical Contact," states, "Sexual assault involving penetration has been shown to cause increased psychological harm to the victim. The offender who engages in penetration ... poses an increased degree of dangerousness." 803 Code Mass. Regs. § 1.33(19). The factor makes no mention of likelihood of reoffense.

That experts need not always examine every element and reach an opinion reflective of all considerations that would be relevant to the fact finder is further evinced by Mass. G. Evid. § 704 (2019) ("An opinion is not objectionable just because it embraces an ultimate issue"). Were the expert's task otherwise, the rule would require, rather than permit, experts to reach the ultimate issue.

A level two designation may be given only where SORB determines both that "the risk of reoffense is moderate and the degree of dangerousness [merits] public availability of registration information" (emphasis added). See G. L. c. 6. § 178K (2) (b ). The absence of either requirement precludes a level two designation. See Central Trust Co. v. Howard, 275 Mass. 153, 158, 175 N.E. 461 (1931) ("The word 'or' is not synonymous with the word 'and' "). See also 1A N.J. Singer & J.D. Shambie Singer, Statutes & Statutory Construction § 21:14 (7th ed. 2009) ("Where two or more requirements are provided in a section and it is the legislative intent that all of the requirements must be fulfilled to comply with the statute, the conjunctive 'and' should be used").

Although the hearing examiner noted that Bard's methodology "does not specifically address the issue of dangerousness," she appropriately did not conclude that his testimony must therefore be disregarded.

The hearing examiner relied on Bard's testimony, for example, to support the proposition that "sexual recidivism risk declines with age." There is a "gradual decline" starting at approximately age forty that becomes "substantial" after age sixty. The hearing examiner concluded, "Given the testimony of Dr. Bard and the well-established supporting research regarding the incremental inverse relationship between advancing age and reduce recidivism, I find the [p]etitioner's current age of 66 to offer mitigating weight within my decision."

In Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 656-657, 126 N.E.3d 939 (2019) (Doe No. 496501 ), we announced the requirement that hearing examiners make separate and explicit findings on each of these three elements. "Separate determinations supported by separate findings improve the rigor and accuracy of final classifications and provide for more effective judicial review." Id. Such findings were not made in this case. Nonetheless, reviewing courts retain discretion whether to remand for explicit and separate findings. For the reasons that follow, we do not exercise that discretion here.

"Factors that are not specifically referenced in a final classification decision are deemed inapplicable." See 803 Code Mass. Regs. § 1.33.

Doe's final classification determination was issued in September 2016 and was premised on information current at that time. Nothing in this opinion should be taken to indicate that Doe would be unsuccessful in seeking reclassification at a later date.

Doe's expert witness, Dr. Leonard Bard, disagreed with this premise. He testified that, in his view, while completion of treatment mitigates risk, "[t]he research has shown that ... lack of participation neither increases nor decreases risk [of reoffense]." "Ideally, the [SORB guideline] factors would always reflect current research." Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 313, 41 N.E.3d 1058 (2015) (Doe No. 380316 ). As we have noted, "guidelines that fail to heed growing scientific consensus in an area may undercut the individualized nature of the hearing to which a sex offender is entitled, an important due process right." See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 608, 999 N.E.2d 478 (2013). Where "there is reason for some concern as to whether [SORB's] guidelines continue to reflect accurately the current state of scientific knowledge," we continue to encourage the agency to update the guidelines in accordance with the latest scientific developments (citation omitted). Doe No. 380316, supra at 308, 41 N.E.3d 1058.

SORB decisions must be supported by "substantial evidence," G. L. c. 30A, § 14 (7) (e ), defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion" (citation omitted). Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109, 18 N.E.3d 1081 (2014).

The absence of this factor does not sufficiently upset the balance of factors to modify the ultimate sex offender classification determination. Indeed, the hearing examiner did not significantly rely on this factor. Refusal of treatment constituted only four sentences of the hearing examiner's thirty-five page decision. Unlike certain other factors, this factor was not assigned "considerable weight."

"The essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving ... nonconsenting persons that occur over a period of at least [six] months." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 n.29, 947 N.E.2d 9 (2011), quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 566 (4th ed. 2000). See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 685 (5th ed. 2013) ("paraphilia denotes any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners").

The hearing examiner also considered Doe's prior substance abuse with respect to alcohol and marijuana, 803 Code Mass. Regs. § 1.33(9), but assigned it "minimal aggravating weight" due to the passage of time. She similarly examined Doe's behavior while incarcerated, 803 Code Mass. Regs. § 1.33(12), assigning it little aggravating weight due to Doe's subsequent successful completion of twelve years in custody "without any noted behavioral incidents."

The hearing examiner also noted that Doe participated in several short-term forms of sex offender treatment prior to reoffending in 1997, 803 Code Mass. Regs. § 1.33(32). After his incarceration in 1997, Doe declined to participate in nonconfidential treatment programs.

As the hearing examiner noted, since being discharged from civil commitment, Doe has worked to help other former inmates transition back into society. "Amongst various endeavors, [Doe] picks these men up from [the treatment center,] helps them find shelters and soup kitchens, guides them in obtaining income, health care and employment options, educates them about the sex offender registration process, and assists them in finding treatment programs and [Alcoholics Anonymous and Narcotics Anonymous] groups."

In classifying Doe as a level two sex offender, the hearing examiner made the implicit finding that he posed a "moderate" degree of danger. See 803 Code Mass. Regs. 1.20(2) (2016) (public availability of individual's information was determined in part by consideration of both risk of reoffense and dangerousness); G. L. c. 6, § 178K (2) (b ) (level two designation requires degree of dangerousness sufficient to merit public availability of registration information). Cf. Doe No. 496501, 482 Mass. at 655, 126 N.E.3d 939 (level two classification implies finding of third element: that public safety interest is served by Internet publication).

Given his "moderate" risk of reoffense, so long as Doe posed at least a "moderate" degree of dangerousness, he properly would be classified as a level two sex offender. See G. L. c. 6, § 178K (2) (c ) (level three classification requires "high" risk of reoffense).

The purpose of requiring Internet publication was not to punish the individual sex offender. Rather, the change in the law was intended "to make it easier for members of the public to access registry information related to level two sex offenders, and presumably thereby to permit the public better to defend themselves and those in their care from the risk of sexual assault by these offenders." See Moe v. Sex Offender Registry Bd., 467 Mass. 598, 612, 6 N.E.3d 530 (2014).

Amendments are retroactive in their operation, and thereby may implicate due process rights, where they mandate "a substantial new legal consequence (Internet publication of offender's registry information) to events completed on or before the date of their enactment (SORB's final determination that offender should be given level two classification) that previously had been expressly prohibited." See Moe, 467 Mass. at 609, 6 N.E.3d 530. Here, the new legal consequence applied after, not before, SORB's final determination.

Doe contends that, if not for the errors in his original hearing in February 2011, he would have received a level two final classification prior to the change in the statute requiring Internet publication. In essence, Doe argues that he is being punished for invoking his right to judicial review. However, Doe was classified as a level three sex offender in 2011, and so he would have been subject to Internet publication in any event. His eventual level two classification came only in 2016, when he was an older man, when the burden of proof had been raised to clear and convincing evidence, and when SORB was aware that a level two classification carried with it the consequence of Internet publication.