APPEALS COURT 
 
 JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 524174 vs. SEX OFFENDER REGISTRY BOARD

 
 Docket:
 24-P-690
 
 
 Dates:
 May 14, 2025 – December 9, 2025
 
 
 Present:
 Sacks, Englander, & Walsh, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Sex Offender. Sex Offender Registration and Community Notification Act. Evidence, Sex offender, Expert opinion. Practice, Civil, Sex offender, Judgment on the pleadings.
 
 

 

      Civil action commenced in the Superior Court Department on February 24, 2022.

      The case was heard by Cathleen E. Campbell, J., on motions for judgment on the pleadings.

      Elizabeth Caddick for the plaintiff.
      Roxann B.C. Greenaway for the defendant.

SACKS, J.  The plaintiff, John Doe, appeals from a Superior Court judgment that affirmed, on judicial review under G. L. c. 6, § 178M, and G. L. c. 30A, § 14, a decision of the Sex Offender Registry Board (board) classifying Doe as a level three sex offender.  Doe argues that the board's hearing examiner (examiner) erred by disregarding, without adequate explanation, (1) the results of an empirically based risk assessment instrument administered and testified to by Doe's expert witness (factor 35); and (2) recent research suggesting that men like Doe, who have been diagnosed with pedophilic disorder, nonexclusive type, present no higher risk of reoffense than sex offenders who are not diagnosed with pedophilic disorder (factor 1 or 37).  Doe further argues that the examiner erred in (3) disregarding the opinion of Doe's expert on Doe's over-all risk of reoffense; (4) applying to Doe, without sufficient basis, the board's factor 12 (behavior while incarcerated or civilly committed); and (5) ordering Internet dissemination of Doe's identifying information despite the lack of evidence that such dissemination works to protect public safety.[1] We conclude that a remand is necessary for the examiner to address further what weight should be given the empirically based assessment of Doe's risk of reoffense testified to by Doe's expert, and to consider whether the research on sex offenders diagnosed with pedophilic disorder, nonexclusive type, affects Doe's classification.
Background.  The examiner found that, at the time of the 2022 board hearing, Doe was twenty-five years old.  In 2014, when Doe was seventeen and babysitting a four year old girl, he told her that they were playing a game of "Simon Says," instructed her to take off her clothes, and then licked her vagina and anus and showed her his penis.  The victim told her mother, who told police.  Forensic testing of the interior crotch area of the victim's underwear revealed the presence of sperm cells and saliva.  In 2016, Doe pleaded delinquent by reason of aggravated rape of a child and rape of a child with force and was committed to the custody of the Department of Youth Services (DYS) until the age of twenty-one, with probation to last until 2028.
In 2015, police had learned that Doe had posted six images of child sexual abuse on an Internet site.  Police executed a search warrant and, on Doe's computer, found a video recording of a six year old girl with an adult male penis in her mouth, plus another 1,122 images of child sexual abuse.  Many of the images showed "young girls and toddlers in various stages of undress, including . . . exposed breasts, buttocks and vaginal areas," and "girls being sexually abused by adult men."  In 2017, Doe pleaded guilty to two counts of violating G. L. c. 272, § 29C, by possessing child sexual exploitation materials, and was ultimately sentenced to concurrent terms of from three to five years.  Doe served some of his sentences in correctional institutions before transferring in 2019 to a sex offender treatment program at the Massachusetts Treatment Center (MTC).  He was released in 2021.
In 2022, the examiner finally classified Doe as a level three sex offender.  A Superior Court judge affirmed that decision in a judgment from which Doe now appeals.
Discussion.  "A reviewing court may set aside or modify [a board] classification decision where it determines that the decision is in excess of [the board's] statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501).  "A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor, and . . . a reviewing court is required to give due weight to [the examiner's] experience, technical competence, and specialized knowledge" (quotation and citation omitted).  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549).  When an examiner does not sufficiently address an offender's evidence concerning the application of a regulatory factor, we "ask whether the error may have affected the classification and, if so, . . . remand to [the board].  This best comports with our statutory mandate to determine whether 'the substantial rights of any party may have been prejudiced' (emphasis added)."  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022), quoting G. L. c. 30A, § 14.
1.  Factor 35:  risk assessment and expert opinion.  Doe argues that the examiner erred by disregarding, without adequate explanation, the results of the Risk for Sexual Violence Protocol (RSVP) assessment -- administered and explained in testimony by Doe's board-funded expert witness, forensic psychologist Dr. Frank DiCataldo (expert) -- which indicated that Doe's risk of reoffense was "moderate."  Factor 35(a) says that the examiner "shall consider . . . empirically-based risk assessment instruments," like the RSVP, and may give them "appropriate evidentiary weight."  Here, the examiner acknowledged that the expert (1) administered the RSVP, (2) found that Doe exhibited four out of the twenty-two RSVP factors, and thus (3) scored Doe as posing a "moderate" risk of reoffense.  The examiner also acknowledged Doe's scores on several other empirically based risk assessment instruments, including the STATIC-99R and STABLE 2007 tests.
Next, however, the examiner grouped all of these results together and stated that they "did not reflect an assessment based on the [b]oard's comprehensive regulatory factors."  The examiner stated that he would "therefore give these tests some weight to the extent each was correctly applied to the facts, and in so doing, only to the extent each may be seen as a general indicator of risk of re-offense."  The examiner did not discuss the RSVP any further.  He did not address how its over-all approach compared to the board's factors, or whether the expert had applied it correctly in Doe's individual case, or what if any weight Doe's score would ultimately be given.  Neither of the examiner's reasons provided an appropriate or objectively adequate basis for brushing aside -- essentially, rejecting -- the expert's RSVP assessment results and opinion.
Of course, evidence offered by an offender is entitled only to consideration, not acceptance.  Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 137 (2019) (Doe No. 23656).  But here, the examiner's formulaic, inconclusive discussion of the weight he gave the RSVP was inadequate.  It "falls short of the reasoned analysis that the case law requires."  Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 575 (2020) (Doe No. 11204).  If we analyze the issue instead as challenging the examiner's treatment of the expert's uncontradicted testimony about the RSVP results, then the examiner failed to give the requisite "explicit and objectively adequate reason" for rejecting that testimony (citation omitted).  Doe No. 23656, supra.  Under either analysis, a remand is required.
We note at the outset that the language used by the examiner here to dismiss the RSVP evidence is identical, or nearly so, to the language used in dozens of other recent board decisions.  Various examiners incorporate this standard language, without further analysis, to dismiss the relevance of various empirically based risk assessments administered to individual offenders.  A review of the records of the board classification decisions that have come to our court on appeal from 2020 to the present discloses at least forty separate cases in which examiners have done so.[2] This practice "undercut[s] the individualized nature of the hearing to which a sex offender is entitled, an important due process right."  Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 608 (2013) (Doe No. 205614).  We now discuss why the examiner's formulaic approach was insufficient in this particular case. 
a.  Factors considered by RSVP.  First, Doe asserts that, despite the examiner's statement, the RSVP does indeed address many of the high-risk or risk-elevating factors found in the board's regulations, including most of the factors that the examiner applied to Doe in this case.  At the hearing, Doe's expert testified about the four RSVP risk factors that led him to score Doe's risk of reoffense as moderate.  Doe plausibly explains how the RSVP factors appear to cover the same issues as at least sixteen of the board's twenty-seven risk-aggravating factors, and there may be one additional area of overlap.[3]  Of the board's seventeen total risk-aggravating factors that are seemingly overlapped by the RSVP, the examiner found seven that applied to Doe (factors 1, 2, 7, 18, 20, 27, and 35).  Of the board's remaining risk-aggravating factors -- with which the RSVP does not expressly overlap -- the examiner applied only three to Doe, none of which appears to have been outcome determinative.[4]
To be sure, the asserted overlap is incomplete.  But factor 35(a) by its own terms recognizes that an assessment is not required or expected to address all of the same issues as the board's classification factors.  Factor 35(a) says the examiner "shall consider" such assessments "as they relate to the offender's risk of reoffense" (emphasis added).  The board's factors, in contrast, by design are more comprehensive, addressing not only risk of reoffense but also "degree of dangerousness."  See preamble to 803 Code Mass. Regs. § 1.33 (2016).  A separate determination of each issue is required.  See Doe No. 496501, 482 Mass. at 656.  If an assessment that relates only to risk of reoffense may be disregarded because, as the examiner stated here, it does "not reflect an assessment based on the [b]oard's comprehensive regulatory factors," then factor 35 risks becoming illusory.[5]
Case law also supports the conclusion that the examiner could not disregard the RSVP merely because it considers fewer risk-aggravating factors than does the board, or because it groups together certain factors that the board lists separately.  Just as "[a]n expert need not examine every factor relevant to a fact finder's determination in order to provide helpful testimony," Doe No. 23656, 483 Mass. at 135-136, and cases cited, neither must an assessment precisely track the board's thirty-eight factor approach in order to be relevant.  Like expert testimony, that an assessment tool "[speaks] to some, but not all, of the relevant considerations is not an 'objectively adequate reason' to reject" the assessment.  Id. at 137.  We adopted similar reasoning in Doe No. 11204, 97 Mass. App. Ct. at 566.  In that case, an offender had been
"released from SDP [(sexually dangerous person)] confinement after two QEs [(qualified examiners)] and the five-member community access board (CAB) unanimously concluded that he no longer met the criteria of an SDP.  In their respective reports, the QEs and the CAB explained in detail the basis of their conclusions that the plaintiff was no longer likely to reoffend despite his diagnosed pedophilia and history of offenses."

Id.  Nevertheless, "[w]ithout engaging in the analysis or with the substantive data on which the experts relied in reaching that conclusion, the hearing examiner effectively disregarded [the reports] simply by noting that there are differences between the SDP and the [board] processes.  In our view, this falls short of the reasoned analysis that the case law requires."  Id. at 575.  The same is true here.
There is another reason the RSVP cannot be discounted for mere failure to track the board's factors.  Under the board's system, examiners do not follow a strict numerical-scoring approach.  As the board's regulations state, an offender's classification "is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances."  Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 197 (2018), quoting 803 Code Mass. Regs. § 1.33.  The classification must reflect "a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).  See Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 299 (2021) (same).
In light of this approach requiring the examiner to exercise discretion in weighing and balancing the relevant risk factors, we conclude that the RSVP assessment, indicating that Doe poses a moderate rather than high risk, must be addressed more substantively.  It cannot be dismissed simply on the basis that the RSVP factors do not bear a one-to-one correspondence to the factors used by the board, or by reciting (as the examiner did here) that it would be considered "only to the extent [it] may be seen as a general indicator of risk of re-offense."
b.  Correct application of RSVP.  Second, the examiner gave the RSVP (like the other assessments in the record) "some weight to the extent [it] was correctly applied to the facts."  Yet, the examiner pointed to no reason to question whether Doe's expert had correctly applied the RSVP to Doe, let alone whether any mistake by the expert led him to misstate Doe's risk of reoffense.  This language, again, is standard phrasing that appears in many board decisions and is far from the individualized analysis due process requires and to which Doe is entitled.  See Doe No. 205614, 466 Mass. at 608.
The examiner thus cast doubt on Doe's RSVP assessment, hinting that he might have reduced the weight given to it on the ground that it might have been improperly conducted, without ever stating whether he did so.  We cannot effectively review whether the examiner gave "appropriate evidentiary weight" to the RSVP results, as envisioned by factor 35(a), unless the examiner clearly explains what weight he gave those results, and why.  Nor can we decide whether the examiner gave an "explicit and objectively adequate reason" for rejecting the expert's opinion insofar as it was based on the RSVP (citation omitted).  Doe No. 23656, 483 Mass. at 136-137.  Under the circumstances, a remand is required.[6]
2.  Factors 1 and 37; pedophilic disorder, nonexclusive type.  Doe submitted evidence that he was diagnosed with pedophilic disorder, nonexclusive type, meaning that he is sexually attracted not only to children but also to adult and adolescent women.[7]  The diagnosis was based not just on Doe's self-reporting but also on an objective attentional test administered to Doe in 2017.
Doe also submitted in evidence four research studies, published between 2014 and 2020, supporting his argument that persons diagnosed with the nonexclusive type of pedophilic disorder pose a lesser risk of reoffense than those diagnosed with the exclusive type, and may pose no greater risk of reoffense than sex offenders who are not diagnosed with pedophilic disorder.[8]  Doe's expert cited these same studies as indicating that "individuals with non-exclusive pedophilia may be at lower risk than exclusive pedophiles."
On this basis, Doe argued that the examiner should not apply to Doe the board's factor 1 (mental abnormality).  Under factor 1(a), for adult males, the board's 2016 regulations stated that "[t]he presence of a statutorily defined mental abnormality specifically related to sexual deviance is significantly associated with an increased risk of reoffense."[9]  Doe argued that his particular mental condition, although undeniably "related to sexual deviance," was not "significantly associated with an increased risk of reoffense."[10]  Factor 1(a).
The examiner was empowered by statute and regulation to address this argument, whether under factor 1 or under factor 37 (other useful information related to nature of sexual behavior).  See G. L. c. 6, § 178K (1) (l); 803 Code Mass. Regs. § 1.33(37).  "The ability to consider other useful information not specifically contemplated by the [classification] guidelines is an important safety valve protecting a sex offender's due process rights" to an individualized risk classification.  Doe No. 205614, 466 Mass. at 604.  The examiner, however, did not address the argument in any fashion, let alone acknowledge the proffered evidence.
The Supreme Judicial Court has held that where an offender submits research studies suggesting that a particular characteristic of that offender indicates a lower risk of reoffense, and where the board's regulations do not already specifically address that characteristic, it is arbitrary and capricious for the examiner not to consider those studies when assessing the offender's risk of reoffense.  See, e.g., Doe No. 205614, 466 Mass. at 602-608 (offender's gender); Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 621-623 (2010) (offender's advanced age).[11][ 
The examiner here was thus required to address Doe's evidence.  Of course, "[t]o the extent the hearing examiner does not credit the [evidence] or questions the underlying science or methodology, the hearing examiner may discount that [evidence] in rendering the classification decision."  Doe, Sex Offender Registry Bd. No. 234076 v. Sex Offender Registry Bd., 484 Mass. 666, 668, 673 (2020).  The examiner might also conclude that given the facts about Doe's diagnosis with pedophilic disorder, factor 1 applies regardless of the research on nonexclusivity, or that factor 1 still applies to Doe but with diminished weight, or that Doe's evidence is more appropriately considered under factor 37.  We express no view on those issues, which are for the examiner to consider on remand in the first instance.  But "[r]easoned analysis is required; [a]ny other approach would effectively insulate the [board]'s action from effective review" (quotation and citation omitted).  Doe No. 11204, 97 Mass. App. Ct. at 576.
3.  Expert's ultimate risk opinion.  The expert also testified that Doe's risk of reoffense, while scored as moderate on the RSVP, could be considered lower based on factors such as Doe's current interest in age-appropriate partners.  The examiner, however, gave reduced weight to this aspect of the expert's opinion, on the ground that the expert had relied too heavily on Doe's self-reporting of sexual interest in adult women and decreased sexual interest in children.  Doe now argues that this was an insufficient basis for declining to credit the opinion.  We are not persuaded.
The record supports the examiner's statement that the expert, in concluding that Doe's sexual interests had changed since his offenses, relied exclusively on Doe's self-reporting.[12]  The expert acknowledged that Doe had not had an intimate relationship with an age-appropriate partner and that Doe maintained some sexual interest in children.  We cannot say it was unreasonable for the examiner to conclude that the expert's diminished-risk opinion would be entitled to more weight if he had cited some objective evidence that Doe's interests had changed.[13]  Doe cites no scientific evidence that an offender's uncorroborated self-reporting on such issues may safely be treated as accurate when predicting recidivism.  Thus, the examiner gave an "objectively adequate reason" for discounting the expert's opinion in this regard (citation omitted).[14]  Doe No. 23656, 483 Mass. at 137.
4.  Factor 12:  behavior while incarcerated.  Doe next argues that the examiner erred in applying factor 12 (behavior while incarcerated or civilly committed) to find that Doe presented an increased risk of reoffense and degree of dangerousness.  Doe erroneously contends that because he did not receive any "disciplinary reports" while incarcerated, factor 12 cannot apply.  
Factor 12 by its terms applies not only to adult men who received disciplinary reports but also to those, such as Doe, who engaged in and were reported for "[p]oor behavior," including "violations of the rules."  Factor 12(a).  Doe acknowledges that, while in DYS custody, he was found to be writing books with sexually explicit content in violation of the terms of his treatment, and that he lost privileges as a result.  He also acknowledges that, while at the MTC, he ordered books found to have inappropriate sexualized content that was inconsistent with his treatment.  MTC records state that the books "violate[d] the terms set forth in the State [i]nmate [p]rogram [p]articipant [h]andbook" and, as a result, Doe was not allowed to receive the books.  Although the examiner's characterization of this behavior as "acting out sexually" might be viewed as overstating the case, we see no error in the examiner's decision to "apply" factor 12, without giving it any special weight.[15]
5.  Internet dissemination.  Finally, Doe argues, seemingly on due process grounds, that his personal information should not be disseminated on the Internet, see G. L. c. 6, §§ 178D, 178K (2) (c), because "[t]here is no evidence that Internet dissemination works" to protect public safety.[16]  Doe's claim is not based on the particulars of his case but instead attacks the facial validity of the statutes requiring dissemination.  The claim is therefore improper in this action brought solely under G. L. c. 30A, § 14, in which review is confined to the record of board proceedings, and the facial constitutionality of the classification scheme is presumed.  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 630-631 (2011).  Cf. Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 19-20 (2021) (as-applied constitutional challenge may be proper in action under G. L. c. 30A, § 14).  We thus do not discuss the claim further.
Conclusion.  The judgment affirming the board's decision is vacated.  The case is remanded to the Superior Court for entry of a new judgment vacating the level three classification and remanding the case to the board for further proceedings consistent with this decision.

So ordered.

footnotes
          

[1] We refer to the board's classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of 803 Code Mass. Regs. § 1.33 (2016).  Although the factors were amended after the examiner's decision in this case, neither the board nor Doe argues that the amendments are material to our decision.  See 803 Code Mass. Regs. § 1.33 (2025).  But see note 9, infra.
          [2] The decisions in those cases have been issued under Rule 23.0 of the Rules of the Appeals Court, as appearing in 97 Mass. App. Ct. 1017 (2020), and they do not focus on this language; therefore, they are not cited here.
          [3] Doe argues that the RSVP addresses the following board factors:  1 (mental abnormality), 2 (repetitive and compulsive behavior), 3 (adult offender with child victim), 8 (weapon, violence or infliction of bodily injury), 9 (alcohol and substance abuse), 10 (contact with criminal justice system), 11 (violence unrelated to sexual assaults), 13 (noncompliance with community supervision), 18 (extravulnerable victim), 20 (diverse sexual behavior), 21 (diverse victim type), 22 (number of victims), 24 (less than satisfactory participation in sex offender treatment), 26 (history of abusing children), 27 (age of victim), and 35 (psychological or psychiatric profiles indicating risk to reoffend).  In addition, the RSVP's "diversity of sexual violence" factor appears to address the board's factor 7 (relationship between offender and victim).
      
          [4] These were factor 12 (behavior while incarcerated or civilly committed), which indicated elevated risk; factor 37 (other useful information related to nature of sexual behavior), consisting here of the studies submitted by Doe and which the examiner ignored or to which he gave little or no weight; and factor 38 (victim impact statement), which the examiner mentioned in passing without stating whether it was assigned risk-aggravating weight.
      
          [5] Relatedly, the RSVP does not expressly address risk-mitigating factors, of which the board's factors include at least seven (factors 28 through 34).  But this cannot justify disregarding altogether the RSVP (or any similar assessment tool).  Where an offender submits the results of an assessment indicating that the offender poses something less than a high risk of reoffense, as Doe did here, it would be absurd to give the assessment no weight because it failed to consider factors that might lower the offender's risk even further.
          [6] We do not require an examiner to provide a lengthy explanation in response to every argument or piece of evidence that the parties present.  An examiner must of course exercise judgment about which arguments and evidence may be material to the outcome and thus require attention.  Here, however, the RSVP evidence required closer attention than is reflected in the examiner's decision.
      
          [7] The full "diagnostic criteria" for pedophilic disorder are found at 302.2 (F65.4) of the Diagnostic and Statistical Manual, Fifth Edition (DSM-5), and include "specify[ing] whether:  Exclusive type (attracted only to children) [or] Nonexclusive type."
      
          [8] The articles were as follows:  Mu?ller, Curry, Ranger, Briken, Bradford, & Fedoroff, Changes in Sexual Arousal as Measured by Penile Plethysmography in Men with Pedophilic Sexual Interest, 11 J. Sexual Med. 1221–1229 (2014); Eher, Olver, Heurix, Schilling, & Rettenberger, Predicting Reoffense in Pedophilic Child Molesters by Clinical Diagnoses and Risk Assessment, Law & Hum. Behav. (2015); McPhail, Olver, Brouillette-Alarie, & Looman, Taxometric Analysis of the Latent Structure of Pedophilic Interest, 47 Archives Sexual Behav. 2223-2240 (2018); and McPhail, Olver, Nicholaichuk, & Haynes, Convergent and Predictive Associations of Three Measures of Pedophilic Interest, Sexual Abuse 1–23 (2020).
      
          [9] In the board's 2025 regulations, factor 1(a) refers to a "high risk of re-offense and degree of dangerousness" rather than merely an "increased risk of reoffense."  The parties have argued this case on the basis of the board's 2016 regulations.
      
          [10] Doe does not argue that his diagnosis with pedophilic disorder is irrelevant.  He does not question how the examiner weighed, when evaluating Doe's degree of dangerousness, that Doe offended against a very young child for whom he was babysitting.  His acts triggered factors 7 (relationship between offender and victim), 18 (extravulnerable victim), and 27 (age of victim).  Thus, Doe's pedophilic disorder -- whether nonexclusive or otherwise -- will necessarily work against him in his classification.
          [11] In 2016, after these decisions, the board revised its regulations to expressly address the characteristics at issue.  See 803 Code Mass. Regs. §§ 1.33 preamble, 1.33(30) (2016).
          [12] The expert's written report and testimony, in listing the grounds for his opinion, did not mention or discuss Doe's results on the objective attentional test administered to him in 2017.
      
          [13] The expert cited a statement in Doe's MTC group therapy treatment records recounting that when Doe expressed interest in viewing "appropriate porn" on the Internet after his release, and other group members opined that this might be risky behavior for him, Doe "acknowledged this feedback."  Doe argues that because this statement was documented in his treatment records, it was not a mere self-report, and so the examiner erred in discounting the expert's reliance on it.  But what the records show is Doe's own statement of his attitude, not any objectively observable change in his behavior.  Although we are puzzled by the examiner's related reference to whether the expert had accurately assessed Doe's "desire to continue to view child pornography" -- the board cites no direct record evidence of such a desire -- it was nevertheless the case that the expert believed both that "pornography" was still a risk for Doe, and that Doe "admit[ted] consistently having deviant sexual arousal to pre-pubescent children."
      
          [14] Doe also argues in passing that the examiner did not sufficiently explain the weight he gave to the tests performed by certain MTC clinicians.  The examiner acknowledged that Doe received a score of seven on the STATIC-99R test, placing him in the "above average" category for risk of recidivism.  On the STABLE 2007 test, Doe's score was fourteen ("average" risk).  The combined score placed Doe in the "well above average" risk category.  The examiner also stated that those clinicians did not testify at the hearing, and so their "ultimate risk opinions" were subject to the language in factor 35 excluding such opinions from consideration "unless the mental health professional testifies as an expert witness at the classification hearing."  Factor 35(a).  This was sufficient in the circumstances.
          [15] Doe's reply brief further argues that factor 12, on its face and as applied to him, is not supported by the scientific publications cited in factor 12(a).  We decline to consider these arguments, which were not made to the examiner, to the Superior Court judge, or in Doe's principal brief.  See Doe, Sex Offender Registry Bd. No. 22164 v. Sex Offender Registry Bd., 103 Mass. App. Ct. 431, 441 (2023); Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  See also Doe No. 68549, 470 Mass. at 114 (challenge to validity of general regulation improper in claim under G. L. c. 30A, § 14).
      
          [16] As part of his argument, Doe also asserts that it was error to classify him as a level three sex offender, but his argument in this regard merely repeats the arguments we have already discussed supra.