PARISEAU, 102 Mass. App. Ct. 67

 
 ELI PARISEAU, petitioner.

102 Mass. App. Ct. 67
 October 3, 2022 - January 5, 2023

Court Below: Superior Court, Berkshire County
Present: Sacks, Hand, & Grant, JJ.

 

No. 21-P-552.

Sex Offender. Constitutional Law, Sex offender, Self-incrimination. Evidence, Sex offender. Practice, Civil, Sex offender, Directed verdict.

At the trial of a petition, filed pursuant to G. L. c. 123A, § 9, for discharge from civil commitment as a sexually dangerous person, the judge did not err in admitting evidence of the petitioner's nonparticipation in sex offender treatment, where there was no risk that the petitioner would thereby suffer unfair prejudice, in that the petitioner's stated reasons for declining treatment fairly supported the inference that he had no desire to be treated for the mental conditions that caused him to offend; and where the reasons for the petitioner's nonparticipation were relevant, probative of his sexual dangerousness, and admissible. [70-76]

At the trial of a petition, filed pursuant to G. L. c. 123A, § 9, for discharge from civil commitment as a sexually dangerous person, the evidence was sufficient to permit the jury to find, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1. [76-77]

Petition filed in the Superior Court Department on June 12, 2017.

 The case was tried before Sharon E. Donatelle, J.

 Fred J. Burkholder for the petitioner.

 Jeanne L. Holmes for the Commonwealth.

 SACKS, J. Eli Pariseau appeals from a judgment continuing his civil commitment to the Massachusetts Treatment Center (MTC) as a sexually dangerous person (SDP), entered after a Superior Court jury found that he remained sexually dangerous. G. L. c. 123A, § 9. On appeal, Pariseau argues that evidence of his refusal to participate in sex offender treatment was presented to the jury in violation of the rule of Commonwealth v. Hunt, 462 Mass. 807 (2012). He also asserts that there was insufficient evidence to support the jury's verdict. We affirm.

 Background. The jury could have found that Pariseau's history of sex offenses against children began in 1968, at age sixteen, when he was charged with the statutory rape of a younger sister. 

 Page 68 

The record is unclear as to whether he was prosecuted for that offense, but Pariseau later admitted to sexually abusing her, as well as attempting to sexually abuse another sister. [Note 1] 

 In 1981, Pariseau was convicted of indecent assault and battery of a child under the age of fourteen -- a nine year old girl in his mother's care -- and was sentenced to two and one-half years in a house of correction. 

 In 1984, Pariseau was arrested after an incident with a three year old girl for whom he had previously babysat. [Note 2] Pariseau had stopped at the girl's house to use the bathroom. By the time the father forced his way into the bathroom, Pariseau had started to run a bath, the toddler was naked, and Pariseau's pants were around his knees -- so that his erect penis was exposed to the toddler. Pariseau was convicted of open and gross lewdness and sentenced to two years in a house of correction. 

 Pariseau's governing offenses took place during the summer of 1990, when he and another man repeatedly assaulted an eleven year old boy who was Pariseau's next-door neighbor. The assaults came to light when police questioned the young victim about allegations that he had sexually assaulted two girls, aged three and five, for whom he was babysitting. The victim revealed that he had done so at Pariseau's direction, and that he himself had been sexually assaulted by Pariseau and the other man "about fifty" times, including orally, anally, and by their performing oral sex on him. In 1991, Pariseau was convicted of twenty-two counts of rape and abuse of a child and sentenced to from fifteen to twenty years in State prison. [Note 3] 

 While serving his prison sentence, Pariseau was offered sex offender treatment. Despite signing an initial treatment agreement 

 Page 69 

and confidentiality waiver, he decided not to participate in the program. Pariseau received about thirty disciplinary reports while incarcerated.

 In 2010, upon completing his sentence, Pariseau was adjudicated an SDP and civilly committed to the MTC under G. L. c. 123A, § 14 (d). See Commonwealth v. Pariseau, 466 Mass. 805, 816 (2014) (affirming judgment of commitment of Pariseau). Between 2010 and 2019, while at the MTC, he accrued at least eleven observation of behavior reports, including several for verbal and physical altercations with other residents, one for possessing sexually explicit photographs of adult women, and one for engaging in illicit sexual activity with another male resident. 

 By 2019, when Pariseau filed this petition for examination and discharge, see G. L. c. 123A, § 9, he had not accepted any of the sex offender treatment offered to him at the MTC. He continued to deny committing any of the sex offenses of which he had been convicted. He denied ever having been sexually interested in children, and he accused the victims (and the father of the three year old victim) of lying. 

 At trial, the Commonwealth presented expert witness testimony from two qualified examiners, Dr. Katrina Colistra and Dr. Gregg Belle, and from Dr. Maria Salvador, who testified to the opinion of the community access board. See generally G. L. c. 123A, §§ 1, 6A, 9 (outlining roles of qualified examiners and community access board). Based on information from Pariseau's criminal history, prison records, MTC reports, and, in Dr. Colistra's case and Dr. Belle's case, an interview with Pariseau, all three witnesses concluded that Pariseau remained sexually dangerous. The qualified examiners and the community access board opined that Pariseau had a general lack of power to control his sexual impulses; that his sexual misconduct was repetitive, compulsive, or both; that he had both a mental abnormality (specifically, pedophilic disorder) and a personality disorder [Note 4] as those terms are defined in G. L. c. 123A, § 1; and that he was currently likely to reoffend sexually if released. Dr. Colistra and Dr. Salvador opined that Pariseau would likely commit a contact sex offense. 

 Page 70 

 Discussion. 1. Evidence of nonparticipation in sex offender treatment. Pariseau's principal argument on appeal is that under Hunt, 462 Mass. at 818-820, it was error for the judge to admit evidence that Pariseau did not participate in nonconfidential sex offender treatment. Before explaining how the issue arose in this case and was resolved at trial, we first review the rule established by Hunt and the more recent decisions analyzing it.

 a. The Hunt rule. In Hunt, the Supreme Judicial Court considered whether, in an initial SDP commitment proceeding under G. L. c. 123A, § 12, it was proper to admit evidence that an offender had refused sex offender treatment while in prison, when participation in the treatment program would have required him not only to admit to prior, potentially uncharged sex offenses, but also to waive confidentiality, meaning that his disclosures might be used against him in future legal proceedings. Hunt, 462 Mass. at 810-811. The court distinguished between evidence that the offender had not received sex offender treatment and evidence that the offender had refused treatment made available to him. Id. at 818, 819 n.10. The court viewed evidence showing nonreceipt of treatment -- without reference to the reason why the offender remained untreated -- as admissible. [Note 5] Id. at 818-819. The court held, however, that evidence of refusal of treatment was inadmissible, because a jury might unfairly infer from such refusal that the offender did not want to be treated, when in fact the offender's reason for refusal might be his concern that his disclosures "will be used against him at a criminal trial, parole hearing, or SDP civil commitment proceeding." [Note 6] Id. at 818.

 Thus, "[w]here sex offender treatment is conditioned on a waiver of confidentiality, refusal of treatment alone is insufficient to support an inference that the prisoner does not want to be treated," and so evidence of the refusal should be excluded. [Note 7] Id. at 819. This exclusion extends as well to "evidence offered by the 

 Page 71 

Commonwealth . . . that would strongly suggest a defendant's refusal of sexual offender treatment, such as evidence that treatment was made available to a defendant who did not receive sex offender treatment." [Note 8] Id. at 819 n.10. For convenience, we refer collectively to these two types of excluded evidence as refusal evidence.

 Subsequent decisions illuminated the reach of the Hunt rule. In Commonwealth v. Cahoon, 86 Mass. App. Ct. 266, 271 (2014), we concluded that refusal evidence may still be admissible in an SDP proceeding under G. L. c. 123A, § 12, if accompanied by evidence that the reason for the offender's refusal has "no logical connection to the avoidance of adverse consequences of disclosure." In Cahoon, there was evidence that the offender had dropped out of treatment and gave two unrelated explanations for refusing further treatment: first, that he had obtained a reduction in his sentence (when, in fact, his motion to revise or revoke had been denied); and, second, that he was "being asked to acknowledge the full extent of the sexual abuse reported by the victim, including certain accusations that he disputed." Id. at 270. We concluded that the first stated reason had nothing to do with the avoidance of adverse consequences of disclosure, and so "the rationale in Hunt [did] not apply," particularly where the offender's statements "[gave] rise to a reasonable (and not unfair) inference that when he failed to obtain a reduction in his sentence, he no longer saw value in continuing treatment and did not wish to receive it." Id. at 271. We concluded also that the second explanation, like the first, "lack[ed] any connection to the avoidance of the adverse use of information disclosed during treatment," because the allegations, "fully aired in the defendant's criminal case[,] . . . already were known and available to be used against him in future proceedings, whether [or not] he acknowledged them as true." Id. 

 The next case to consider Hunt was Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 139 

 Page 72 

(2019) (Doe No. 23656). There, the Sex Offender Registry Board's (board's) classification regulations stated (as they do today) that offenders who "refuse to participate in" treatment present an "increased risk of reoffense and degree of dangerousness." Id. at 140, quoting 803 Code Mass. Regs. § 1.33(24) (2016). Notably, the regulations did so without regard to the reason for the refusal. See 803 Code Mass. Regs. § 1.33(24).

 Applying Hunt, the court determined that in board classification proceedings, as in SDP proceedings, if "sex offender treatment is conditioned on a waiver of confidentiality, refusal of treatment alone is insufficient to support an inference that the [offender] does not want to be treated." Doe No. 23656, supra at 140-141, quoting Hunt, 462 Mass. at 819. Such an inference was improper in Doe No. 23656 in light of the offender's explanation that he was "not against treatment" and that "the reasons for his refusal were related to the legal appeal of his case." Doe No. 23656, supra at 142. The offender also testified to his concern that the lack of confidentiality during treatment at the MTC (where he had previously been committed for five years, id. at 132) meant that "information regarding treatment participat[ion] could be used against [him] during Section 9 hearings." Id. at 142.

 Most recently, in Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 767 (2022) (Doe No. 6729), the board again considered an offender's refusal of treatment as a factor supporting his level three (high-risk) classification, even though the offender had explained that he was "concerned about his comments being used in civil commitment proceedings." The court held that, under the earlier decision in Doe No. 23656, 483 Mass. at 141, the board had erred in considering this refusal evidence, "[g]iven Doe's expressed concerns regarding confidentiality." Doe No. 6729, supra.

 These decisions, taken together, suggest that in SDP proceedings, [Note 9] the Commonwealth may not introduce refusal evidence, i.e., evidence that an offender has chosen not to participate in 

 Page 73 

available nonconfidential sex offender treatment, at least when the offender's reason for declining treatment is that participation would have required him to make admissions about prior sex offenses that could be used against him in future legal proceedings. See Hunt, 462 Mass. at 818; Cahoon, 86 Mass. App. Ct. at 270. See also Doe No. 6729, 490 Mass. at 767 (same, in board proceedings); Doe No. 23656, 483 Mass. at 139-141 (same). On the other hand, evidence that the offender chose not to participate in such treatment for other reasons is admissible, where such reasons are probative of the offender's sexual dangerousness or risk of reoffense. [Note 10] See Cahoon, supra at 270-271.

 b. The Hunt issue as raised here. Pariseau filed a motion in limine, based on Hunt, seeking to exclude any reference at trial to his refusal to participate in nonconfidential sex offender treatment. During the motion hearing, however, trial counsel made clear that she did not object to, or argue that Hunt required exclusion of, evidence of Pariseau's having chosen not to accept the treatment offered to him and of the reasons he gave for his choice. Instead, she objected only to the use of the word "refuse," because of its "negative connotation." 

 Accordingly, the judge, without objection from either party, ordered the Commonwealth not to characterize Pariseau's decision as a "refusal," but she allowed the Commonwealth to introduce evidence that Pariseau was offered treatment and "did not participate," provided it was supported by expert testimony that lack of treatment is linked to a greater likelihood of reoffending. She also ruled that Pariseau's "statements as [they] relate[] to the basis for his nonparticipation are relevant" and would be admissible. At trial, Pariseau did not object to any of this evidence. 

 On appeal, however, Pariseau reverses course and contends that all of the evidence concerning his nonparticipation in available treatment, including his reasons therefor, was inadmissible under Hunt. [Note 11] Because Pariseau's motion in limine, as argued, did not seek to exclude this evidence, see Commonwealth v. Grady, 474 Mass. 715, 

 Page 74 

721-722 (2016), and because he did not object to it at trial, we review this claim only to determine whether any error created a substantial risk of a miscarriage of justice, see R.B., petitioner, 479 Mass. 712, 717-718 (2018).

 Dr. Colistra testified that the type of treatment offered at the MTC has been shown to reduce recidivism. She further testified that Pariseau's choice "not to participate in treatment or not to learn any interventions that could prevent a re-offense" demonstrated "poor problem solving," which was a factor contributing to his risk of reoffense. 

 The evidence was that Pariseau had stated multiple reasons for declining treatment. In one interview, he told Dr. Colistra that "he was legally advised not to participate given his denial of his offenses." Upon further inquiry, he told her that "he [did] not believe in the efficacy of treatment" and objected to it because "it's never ending" and "only puts money in their . . . pocket," referring to treatment providers. He had also "hear[d] other residents talk about the negative aspects of treatment." He told Dr. Colistra that he did "not want [to] discuss ways to manage his risk" and that he had "no interest in learning or participating in any form of assessment or treatment." The explanation Pariseau often gave was that he did not need treatment because he had not committed any sex offenses in the past, did not want to admit to such offenses (as he would have to do in treatment), and was not at risk of offending in the future. 

 This evidence regarding Pariseau's stated reasons for declining treatment fairly supported the inference that Pariseau had no desire to be treated for the mental conditions that caused him to offend. Unlike in Hunt, the jury were not left to speculate or draw unsupported inferences about why Pariseau did not receive treatment. Thus, there was no risk that Pariseau might suffer the type of unfair prejudice described in Hunt or Doe No. 23656. We conclude that the judge did not err in ruling that the reasons for 

 Page 75 

Pariseau's nonparticipation were relevant, probative of his sexual dangerousness, and admissible. [Note 12]

 To be sure, Pariseau was free to -- and did -- offer alternative explanations for his decision. Pariseau's expert witness, Dr. Eric Brown, testified that Pariseau said he "was very reluctant to try [treatment] because he had done so poorly in school," notwithstanding that MTC treatment providers offer accommodations to those (like Pariseau) who have cognitive limitations. Dr. Brown also suggested that, while in prison before being committed to the MTC, Pariseau was hesitant to engage in treatment because he had been assaulted by other inmates after being identified as a sex offender. [Note 13] The relative weight to be given these alternative explanations was, of course, a matter for the jury.

 There remains the matter of the admission in evidence of Pariseau's statement to Dr. Colistra that he was "legally advised not to participate given his denial of his offenses." We need not decide whether this somewhat opaque mention of legal advice was admissible under the Hunt rule, [Note 14] as we conclude in any event that its admission created no substantial risk of a miscarriage of justice here. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) (listing factors to be considered in substantial risk analysis). The Commonwealth's case was strong, and this was one among many other (and otherwise admissible) reasons for Pariseau's refusal of treatment. It appeared only once in an 

 Page 76 

exhibit, was not mentioned in testimony or closing arguments, [Note 15] and was unlikely to have been a focus of the jury's deliberations. In sum, any Hunt error here would not entitle Pariseau to relief.

 2. Sufficiency of the evidence. Pariseau argues that the judge erred by denying his motions for a directed verdict at the close of the Commonwealth's case and of all the evidence. On appeal, we ask "whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1." Commonwealth v. Blake, 454 Mass. 267, 271 (2009) (Ireland, J., concurring), quoting Commonwealth v. Boyer, 61 Mass. App. Ct. 582, 589 (2004). Here, Pariseau argues that there was insufficient evidence that he had "a general lack of power to control [his] sexual impulses" or that he "is likely to attack or otherwise inflict injury . . . because of his uncontrolled or uncontrollable desires." G. L. c. 123A, § 1. See Green, petitioner, 475 Mass. 624, 626 n.7 (2016). 

 More specifically, Pariseau argues that there was insufficient evidence to prove that he suffers from "a volitional impairment rendering [him] dangerous beyond [his] control." Kansas v. Hendricks, 521 U.S. 346, 358 (1997). But neither that decision, nor due process, nor G. L. c. 123A requires such proof. [Note 16] See Dutil, petitioner, 437 Mass. 9, 18 (2002).

 Pariseau also contends that the Commonwealth's proof fell short because "[e]vidence of past sexual misconduct, standing by itself, will not support a finding of sexual dangerousness." Page v. Commonwealth, 13 Mass. App. Ct. 384, 387 (1982). To dispose 

 Page 77 

of this contention, it is enough to say that the evidence here, already summarized supra, went far beyond the evidence in Page.

 Finally, Pariseau argues that the evidence was insufficient because his own expert witness, Dr. Brown, had "a different, and more reasonable explanation, for his behavior" than did the Commonwealth's witnesses. But in an SDP case, as in other cases, "[t]he matter of how much weight is to be given a witness, particularly an expert witness, is a matter for the trier of fact, not an appellate court." Commonwealth v. Cowen, 452 Mass. 757, 762 (2008). In determining the sufficiency of the evidence, "we look only to the evidence presented by the Commonwealth, and disregard any contrary evidence presented by the [opposing party]." Commonwealth v. Platt, 440 Mass. 396, 400-401 (2003). The Commonwealth's evidence was not only sufficient, but also strong.

 Judgment affirmed.

FOOTNOTES
[Note 1] Pariseau was adjudicated either delinquent or as a stubborn child in 1968. The record leaves unclear whether the adjudication related to the statutory rape or instead to his nonsexual assault of his grandmother. 

[Note 2] During the 1984 investigation, police received an additional report that Pariseau had sexually assaulted a six year old girl. The judge allowed a motion in limine excluding any reference to this allegation at Pariseau's § 9 trial, but a reference to it was included in a community access board report admitted in evidence. Pariseau argued for the first time at oral argument that this reference was prejudicial error. The argument was not raised in Pariseau's brief, and we decline to consider it. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). 

[Note 3] Pariseau's history of nonsexual offenses included multiple charges of assault and battery, disorderly conduct, and arson, although most of them were dismissed. In 1977, he was convicted of assault and battery and received a three-month sentence and probation; he received a thirty-day sentence in 1982 for violating an abuse prevention order obtained by his mother. He has also been fined for at least ten motor vehicle-related offenses. 

[Note 4] Dr. Colistra testified that Pariseau had antisocial personality disorder. Dr. Belle and Dr. Salvador testified that Pariseau had an "other specified personality disorder with antisocial traits." 

[Note 5] Nonreceipt of treatment is relevant where a qualified examiner or the Commonwealth's expert witness has offered the opinion, sufficiently supported by empirical evidence, "that those who receive or complete sex offender treatment are less likely sexually to reoffend than those who do not." Hunt, 462 Mass. at 818. 

[Note 6] These were later described as "legitimate concerns" that made it unfair to infer that such an offender did not want to be treated. Commonwealth v. Cahoon, 86 Mass. App. Ct. 266, 270 (2014). 

[Note 7] The court also recognized the possibility that the lack of confidentiality in sex offender treatment may "impede the development of an atmosphere of confidence and trust, chill the candor of communication, and diminish the likelihood of successful treatment." Hunt, 462 Mass. at 818. We return to this point infra. 

[Note 8] The court limited its ruling to "evidence offered by the Commonwealth." Hunt, 462 Mass. at 819 n.10. If an offender wishes to explain his nonreceipt of treatment by offering (or agreeing to the admission of) evidence that he declined treatment out of concern about the adverse legal consequences of making nonconfidential disclosures, nothing in Hunt indicates that the offender should be barred from doing so. 

[Note 9] The Commonwealth, noting that both Hunt and Cahoon arose under § 12, argues that Hunt should not apply to § 9 proceedings such as this one, where the finder of fact would necessarily learn that the offender has previously been committed to the MTC, and thus would expect to hear evidence about the offender's participation in and attitude toward treatment. We need not reach this argument, because we determine infra that, in any event, Hunt does not bar the particular evidence offered here, with one possible exception that does not entitle Pariseau to relief. 

[Note 10] We need not decide whether similar principles would apply in board proceedings. 

[Note 11] Pariseau further claims that it was error to admit Dr. Colistra's testimony that sex offender treatment reduced the likelihood of sexual reoffense because that testimony, in Pariseau's view, was not "sufficiently supported by empirical evidence," as required by Hunt, 462 Mass. at 818. The argument is meritless. Although Dr. Colistra acknowledged the existence of studies raising questions about the correlation between such treatment and reduced sexual recidivism, she also testified that those same studies, and other studies, cited evidence of a positive correlation between such treatment and reduced sexual recidivism. Pariseau also notes that Dr. Belle acknowledged the existence of studies suggesting that "low motivation for treatment" was not related to sexual recidivism. But Pariseau does not explain how that finding regarding motivation negates the view, discussed in Hunt and certainly implicit in Dr. Belle's concerns that Pariseau remained an untreated pedophile, that those who actually "receive or complete sex offender treatment are less likely sexually to reoffend than those who do not." Id. Hunt does not require that the evidentiary basis for the correlation be undisputed. See id. at 818 n.8. 

[Note 12] As mentioned, see note 7, supra, the court in Hunt also recognized the possibility that the lack of confidentiality in sex offender treatment could "diminish the likelihood of successful treatment." Hunt, 462 Mass. at 818. To whatever extent this factor might contribute to the unfairness of inferring from an offender's unexplained refusal of treatment that he does not want to be treated, that concern was absent here. Pariseau made clear to Dr. Colistra that he had "no interest in learning from or participating in any form of assessment or treatment." He did not qualify this statement by suggesting that treatment was less effective because of its nonconfidentiality or that he would participate in treatment if only it were confidential. 

[Note 13] The assaults occurred while Pariseau was incarcerated in 1990 and 1991; he was transferred to the MTC temporarily in 2009 and was committed there indefinitely in 2010. 

[Note 14] Pariseau did not directly express concern that his disclosures in treatment could be used against him in future legal proceedings -- the issue in Doe No. 6729, 490 Mass. at 767; Doe No. 23656, 483 Mass. at 142; and Hunt, 462 Mass. at 818. The reluctance to make particular admissions in treatment is not always logically connected to avoiding the adverse use of those admissions in future proceedings. See Cahoon, 86 Mass. App. Ct. at 270-271. 

[Note 15] Pariseau's brief argues that the Commonwealth's closing argument asserted, without any evidentiary basis, that Pariseau had attempted to sexually abuse another of his sisters when they were children. Pariseau maintains that the jury would have understood this to refer to uncharged conduct that could have been used against him later had he disclosed it in nonconfidential treatment. As counsel acknowledged during oral argument before us, however, the jury heard evidence that Pariseau admitted to Dr. Colistra that he had attempted sexual abuse of that sister. And the Commonwealth's closing argument said nothing about any concern on Pariseau's part that disclosing such an attempt in treatment, after already having disclosed it to Dr. Colistra, could have been used against him in future legal proceedings. 

[Note 16] Rather, "substantive due process requires the Commonwealth to prove that a person is likely to pose a danger to others if released because he suffers from a 'mental illness, abnormality, or disorder' that causes that person to have 'serious difficulty in controlling [his] behavior.'" Johnstone, petitioner, 453 Mass. 544, 549 (2009), quoting Kansas v. Crane, 534 U.S. 407, 412-413 (2002). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.