NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-707

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 188295

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from the decision of a Superior Court judge affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender. We affirm.

Background. We summarize the facts as set forth in the hearing examiner's decision, "supplemented by undisputed facts from the record." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No. 10800). In or around 2000, Doe, who was then approximately thirty-eight years old, sexually abused his girlfriend's two granddaughters. Both girls were under eleven years old at the time. On three occasions, Doe had the older child sit on his

lap before rubbing her leg, then putting his fingers into her vagina. Doe also lifted her shirt and, on at least two occasions, sucked on her nipples. Doe also put his fingers into the younger girl's vagina at least three different times. A grand jury returned six indictments against Doe for rape of a child under sixteen years old by force; ultimately, Doe was convicted in the Superior Court of three counts of indecent assault and battery on a child under fourteen years old and two counts of statutory rape.

The board preliminarily classified Doe as a level three sex offender, a recommendation the board's hearing examiner affirmed after a de novo hearing. In reaching her decision, the hearing examiner applied high-risk factors two (repetitive and compulsive behavior) and three (adult offender with child victim).[1] See 803 Code Mass. Regs. §§ 1.33(2), (3) (2016). Additionally, the examiner applied risk-elevating factors seven (relationship between offender and victim), twelve (behavior while incarcerated), sixteen (public place), eighteen (extravulnerable victim), nineteen (level of physical contact), twenty-two (number of victims), and twenty-four (less than satisfactory participation in sex offender treatment). See 803 Code Mass. Regs. §§ 1.33(7), (12), (16), (18), (19), (22), (24)

---

[1] The examiner gave "increased weight" to factor three, based on the age disparity between Doe and the child victims.

2

(2016).  The examiner gave full weight to mitigating factor twenty-eight (supervision by parole), moderate weight to factor thirty (advanced age), and minimal weight to factor thirty-four (Doe's evidence of stability in the community).  See 803 Code Mass. Regs. §§ 1.33(28), (30), (34) (2016).  Finally, the examiner gave detailed consideration to five scholarly articles Doe submitted, ultimately assigning them various weight under factor thirty-seven (other information related to the nature of the sexual behavior).  See 803 Code Mass. Regs. § 1.33(37) (2016).  Doe challenged the classification in the Superior Court without success, and this appeal followed.

Discussion.  1.  Standard of review.  A level three classification requires explicit findings, supported by clear and convincing evidence, that the offender presents "a high risk of reoffense, a high degree of dangerousness, and a public safety interest is served by active dissemination of the offender's registry information . . . ."  Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022) (Doe No. 6729).  See G. L. c. 178K, § 2 (c).  "A reviewing court may set aside or modify [the board's] classification decision where it determines that the decision is in excess of [the board's] statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender

3

Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019), citing G. L. c. 30A, § 14 (7). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Doe No. 10800, 459 Mass. at 632, quoting G. L. c. 30A, § 1 (6). In our assessment, "[w]e give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it" (quotation and citation omitted). Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 88 (2019) (Doe No. 523391). Where we conclude that an examiner misapplied a regulatory factor, we "ask whether the error may have affected the classification." Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022) (Doe No. 22188).

2. Factor twenty-four. We are not persuaded that the hearing examiner erred by applying factor twenty-four in classifying Doe as a level three sex offender.[2] The board's regulations provide that "[o]ffenders who refuse to participate in . . . sex offender treatment present an increased risk of reoffense" and require an examiner to consider an offender "who,

---

[2] We consider the issue to have been joined, if cursorily, before the hearing examiner and so conclude that it was not waived.

4

during his most recent opportunity to participate in treatment while in custody . . . refused to participate in a sex offender treatment program . . . to be at an increased risk of reoffense and degree of dangerousness."  803 Code Mass. Regs. § 1.33(24). To be sure, as Doe argues, where sex offender treatment is conditioned on a waiver of confidentiality, refusal of treatment alone does not support an inference that the offender does not want to be treated.  See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 139-142 (2019) (Doe No. 23656).  Here, however, where the examiner had additional evidence of Doe's disinterest in treatment, apart from the mere fact of his refusal to participate, we find the recent decision in Pariseau, petitioner, 102 Mass. App. Ct. 67, 67, 74 (2023), instructive.  There, as part of an appeal from a judgment continuing his commitment as a sexually dangerous person (SDP), the offender challenged the jury's ability to consider evidence that he had declined nonconfidential sex offender treatment.  See id. at 67, 73-74.  The offender had given multiple reasons for his refusal, first telling a qualified examiner that "he was legally advised not to participate given his denial of his offenses" and later telling her that "he [did] not believe in the efficacy of treatment," objecting to the duration of the treatment, and stating that it was profit driven and that he had "hear[d] other residents talk

5

about the negative aspects of treatment."  Id. at 74.  This court affirmed the propriety of the admission of the defendant's refusal to participate in treatment, concluding that "[t]his evidence regarding [the offender's] stated reasons for declining treatment fairly supported the inference that [he] had no desire to be treated for the mental conditions that caused him to offend," and that "there was no risk that [he] might suffer the type of unfair prejudice described in . . . Doe No. 23656." Pariseu, supra at 74.

We apply similar reasoning here.  Doe, like the offender in Pariseau, raised disclosure of his confidences on appeal as one reason for declining sex offender treatment, but provided other reasons for his decision as well.  His hearing testimony, which the examiner appears to have credited, included his statements to the effect that (1) he was offered sex offender treatment but preferred to take a different class being offered through the prison chapel[3]; (2) he had seen inmates who participated in sex

_____

[3] The examiner found that Doe "allege[d]" that the religious-based program was "approved by the Pastor . . . to take the place of [sex offender treatment]."  Where Doe testified that the pastor "got permission to have the program taught and the [Department of Corrections] approved it," and that the program was "taught . . . as a religious-based program, basically mirroring this [sex offender treatment] program but on a religious based scenario," we are not persuaded that the examiner's finding was against the preponderance of the evidence.  See Doe No. 523391, 95 Mass. App. Ct. at 91.  The hearing examiner was not required to credit Doe's later equivocation about the religious-based program being only "a

6

offender treatment change in negative ways after their participation; and (3) his prior experience with admitting guilt for his sexual offending had led to the disintegration of his marriage. Additionally, when cross-examined about his willingness to participate in sex offender treatment after his release from prison, Doe indicated that his existing plan "was not going to stop because I go out," and that he would continue a Christian-based program through a chaplain in Massachusetts or Wyoming, where he planned to relocate after his release. We are not persuaded that the hearing examiner erred in relying on factor twenty-four.[4]

_____

preliminary," rather than "an alternative," for other sex offender treatment. See Doe No. 23656, 483 Mass. at 138.

[4] Further, to the extent that Doe argued that he refused treatment based on his concerns about the lack of confidentiality in his disclosures pending an appeal from his convictions, on this record he had no proper basis for doing so. This is because by the time of the 2021 classification hearing, Doe's direct appeal from his convictions had been exhausted nearly a decade earlier; the examiner's citation to the plaintiff's appellate case in her decision demonstrates her awareness of that fact. Doe continued to refuse treatment after any direct appellate rights stemming from his convictions had been exhausted. Although Doe testified that at the time of the hearing he had "something on hold" in a Federal court, he provided no detail about that appeal or its subject matter; the examiner was not bound to credit Doe's testimony on that point. See Doe No. 23656, 483 Mass. at 138. We are aware that Doe remains at risk of being subjected to a petition for civil commitment as an SDP, although he has not argued this point. See G. L. c. 123A, § 12.

7

3.  <u>Factor two</u>.  Doe's challenge to the applicability of factor two to the facts of his case was not raised before the hearing examiner or in the Superior Court and so it is waived.  See <u>Smith</u> v. <u>Sex Offender Registry Bd</u>., 65 Mass. App. Ct. 803, 810 (2006).  Even if that were not the case, however, we would discern no error in the examiner's application of this factor given Doe's continued abuse of the victims after being "discovered and confronted" by the girls' grandmother (Doe's girlfriend) while the older victim was sitting, shirtless, on his lap.  803 Code Mass. Regs. § 1.33(2).  The older child's trial testimony, as reflected in the appellate decision affirming the defendant's conviction, which was part of the hearing record, included her account of being seated on Doe's lap when Doe started tickling her, then pushed up her shirt over her head.  The child testified that Doe's girlfriend then walked in and saw them, started yelling, and told the child to get off of Doe.  Doe's girlfriend's statement differed in some ways from the child's account, and included her observation that when she walked into the room, Doe was rubbing the child's back as the child sat, shirtless, on his lap.  Read in the context of Doe's pattern of sexually abusing the older victim by touching her nipples or vagina after positioning her on his lap and rubbing other nonprivate areas of her body, Doe's actions at the time that his girlfriend walked in on him amounted to "sexual

8

misconduct," if not a sexual offense. Compare 803 Code Mass. Regs. § 1.33(2) ("sexual misconduct") with G. L. c. 6, § 178C ("sex offense"). We accord deference to the board's judgment, expressed in its regulations, concerning the type of conduct that presents a high risk of reoffense. See Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 296-298 (2021). Doe's girlfriend's response to Doe's misconduct -- "yelling" and directing the child off Doe's lap -- was sufficient "discovery and confrontation" to trigger application of factor two. See 803 Code Mass. Regs. § 1.33(2).

4. Factor twelve. Doe's argument against the examiner's application of factor twelve is undermined by our determination, supra, that the examiner could properly consider Doe's refusal to participate in sex offender treatment.[5] Further, even assuming, arguendo, that the examiner considered Doe being on "disciplinary status" and his resulting denial of parole as factors in her assessment of dangerousness and that she erred in doing so, we are not persuaded that a remand is required on that basis. See Doe No. 22188, 101 Mass. App. Ct. at 804. In light

---

[5] While we agree with Doe that the examiner could not properly have considered the fact of (1) Doe's "P.E.S. status" or (2) his being denied parole as examples of his failure to comply with institutional rules while incarcerated, she could (and, we conclude, did) highlight those facts as illustrations of the importance to the institution of Doe's refusal to complete the required treatment.

9

of the examiner's reasoned discussion of the remaining factors she applied in reaching her classification decision, however, we are confident that any error in the examiner's application of factor twelve did not affect that decision.  See id.

We discern nothing in the hearing examiner's findings or her application of factor twelve to support Doe's claim that the examiner either failed to consider appropriately the "seriousness" of the two disciplinary reports from 2012 and 2018 that she noted in her report, or that the examiner failed to consider the lack of more frequent or more serious disciplinary action as evidence that his adjustment to incarceration was "satisfactory."

5. Factors twenty-eight, thirty, and thirty-seven.  Doe's challenges to the hearing examiner's interpretation and weighing of the five scholarly articles Doe submitted at the classification hearing were not adequately preserved for our review.  As to factor twenty-eight, Doe did not argue to the motion judge in the Superior Court, as he does on appeal, that the hearing examiner failed to take proper account of the mitigating effect of his ten year probationary term.[6]  Similarly, with respect to factor thirty, although Doe's attorney argued to

---

[6] This is unsurprising given that, as Doe acknowledges, the hearing examiner gave full mitigating weight to factor twenty-eight (supervision by probation or parole).

10

the hearing examiner that Doe's exhibits showed that the then fifty-nine year old Doe was "approaching the point [age sixty] where his recidivism is starting to decrease,"[7] he did not contend (as he does on appeal) that the articles mandated a finding that Doe presented a "low risk to reoffend." Finally, although Doe argues on appeal that in her consideration of factor thirty-seven, the hearing examiner misread the articles as supporting the conclusion that Doe "has a higher re-offense rate" because he "refused sex offender treatment," he did not raise this argument in the Superior Court. Each of these arguments is waived; we do not consider them. See Smith, 65 Mass. App. Ct. at 810.

6. Classification determination. We are also unpersuaded by Doe's argument that the decision in this case reflected a "mechanical application of a checklist" and was not supported by clear and convincing evidence of Doe's high degree of dangerousness and high risk of recidivism. See G. L. c. 178K, § 2 (c); Doe No. 6729, 490 Mass. at 768. Our review of the hearing examiner's decision in its totality satisfies us that the examiner properly considered the facts of Doe's case and weighed them against the required statutory and regulatory factors. The examiner identified each factor that she applied

_____

[7] Indeed, the hearing examiner gave moderate mitigating weight to Doe's age under factor thirty.

11

and explained the reason for its application; although she was not required in every instance to do so, in several instances, the examiner also specified the weight she assigned to the factor based on the specifics of Doe's case.  The hearing examiner's "[analytical] path may reasonably be discerned," NSTAR Elec. Co. v. Department of Pub. Utils., 462 Mass. 381, 387 (2012), quoting Costello v. Department of Pub. Utils., 391 Mass. 527, 535-536 (1984), from the decision and it is clear that "the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).  We discern no abuse of discretion.

Judgment affirmed.

By the Court (Singh, Hand & D'Angelo, JJ.[8]),

Clerk

Entered:  October 4, 2024.

_____

[8] The panelists are listed in order of seniority.

12