NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-226

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 526715

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment that affirmed, on judicial review under G. L. c. 6, § 178M, and G. L. c. 30A, § 14, the decision of the Sex Offender Registry Board (board) to classify him as a level three sex offender. He argues that the hearing examiner erred in considering hearsay evidence of Doe's 2005 misconduct and in applying numerous risk factors. We conclude that the examiner's reliance on the hearsay may have been reasonable, but that her analysis requires further explanation, and that errors or potential errors in applying four factors require a remand to the board to reconsider Doe's classification. We therefore vacate the judgment.

Our review is limited: "[w]e reverse or modify the board's decision only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011). The examiner makes subsidiary findings using the preponderance of the evidence standard. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 92 (2019) (Doe No. 523391). For ultimate findings, the evidence before the examiner must be clear and convincing. Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298 (2015).

1. Hearsay. The examiner considered hearsay evidence of Doe's 2005 conduct toward a fifteen year old girl (whom we shall call Jane) in a residential facility for troubled teens, where Doe was a twenty-four year old direct care worker. The evidence was set forth in a Department of Children and Families (DCF) investigative report under G. L. c. 119, § 51B (§ 51B report). The § 51B report supported allegations that Doe had touched Jane inappropriately (on the back and stomach and by kissing her cheek) and made sexualized comments to her (including that he liked a particular type of underwear she wore and that she should date someone older, like him). Based on the § 51B report, Doe's employment at the facility was terminated.

2

"[H]earsay evidence may be admissible if it bears sufficient indicia of reliability." Doe No. 523391, 95 Mass. App. Ct. at 89. "[W]e ask whether it was reasonable for the examiner to admit and credit the facts described in the hearsay evidence" (quotation and citation omitted). Id. "Factors that the examiner should consider include the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like" (quotation and citation omitted). Id.

Here, in ruling that the evidence of sexual misconduct was reliable, the examiner acknowledged these governing standards. She discussed several of them. Doe now argues that the examiner failed to consider certain factors bearing on the reliability of the § 51B report and of Jane's statements contained in it.

First, Doe points out that the DCF investigator in 2005 was both applying a lower standard and making a different finding than what was required of the examiner in 2022. At both times, to "support" a report of suspected abuse, DCF need not have found that any abuse occurred, but only that there is "reasonable cause to believe" that abuse occurred or was at substantial risk of occurring. 110 Code Mass. Regs. § 4.32(2) (2009); 110 Code Mass. Regs. § 4.32(2) (2000). See Cobble v.

3

Commissioner of Dep't of Social Servs., 430 Mass. 385, 394 (1999); Kyle K. v. Department of Children & Families, 103 Mass. App. Ct. 452, 453 (2023). The "reasonable cause to believe" standard[1] falls short of the preponderance standard that the board must meet to establish subsidiary facts. See Doe No. 523391, 95 Mass. App. Ct. at 92.

The fact at issue here was whether sexual misconduct actually occurred. The examiner credited Jane's allegations of Doe's sexual misconduct against her and found them as fact. However, to Doe's point, the examiner unnecessarily muddled these findings by references to DCF's assessment of Doe's behaviors toward Jane and the result of DCF's investigation. On remand, the examiner should make clear that the appropriate standard for board proceedings was applied and should set forth fully the factors she considered in assessing the reliability of Jane's hearsay allegations. Although the examiner may properly consider hearsay information contained in a § 51B report, DCF's own findings and conclusions regarding that hearsay would appear

---

[1] In 2005 and 2022, "reasonable cause to believe" was defined to mean "a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected." 110 Code Mass. Regs. § 4.32(2). The new definition is not materially different. See 110 Code Mass. Regs. § 4.32(3) (2023).

to be of limited relevance to whether the hearsay was substantially reliable to the extent necessary to establish the fact at issue.[2]

Doe makes several other arguments as to why the 2005 § 51B report was unreliable hearsay, but those arguments do not persuade us. In particular, Doe points to Jane's motives to fabricate her allegations against him. During the § 51B investigation, Doe suggested that Jane had such motives, as did one of Doe's coworkers. The DCF investigator acknowledged those suggestions, however, and also considered other factors suggesting that Jane's allegations were reliable. These included that Jane appeared sincere and upset and was crying when she made the allegations to facility staff; that another resident -- whom staff had reason to think would not support a false allegation against a staff member -- corroborated some of Jane's allegations; and that Jane was generally consistent in the allegations she made to staff. See Doe No. 523391, 95 Mass. App. Ct. at 90 & n.7 (consistency in allegations not dispositive but may be considered).

---

[2] If the examiner believes it is appropriate to give weight to DCF's contemporaneous assessment of Jane's reliability, the examiner should explain her reasons for doing so. Relatedly, Doe points to a statement in the report that prompted the § 51B investigation, that prior to 2005, Jane had alleged staff abuse at another facility but a different investigator concluded that she had lied. If the examiner gives any weight to that conclusion, she should explain her reasons.

No doubt, as Doe's brief highlights, some of the evidence discussed by the § 51B investigator tended to support Doe. Numerous other facility staff had not observed Doe do anything improper, and to the extent that Doe corroborated some of the details stated by Jane, those details were relatively innocuous. Nevertheless, the examiner found Jane's allegations sufficiently credible to conclude that sexual misconduct occurred.

The question for us is not whether we ourselves would view the hearsay as reliable if the matter were before us de novo, but whether the examiner's decision to treat it as reliable was reasonable. See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 143-144 (2019); Doe No. 523391, 95 Mass. App. Ct. at 89. Further analysis by the examiner will help clarify the matter.

2. Application of risk factors. Doe argues that the examiner misapplied seven board risk factors. See 803 Code Mass. Regs. § 1.33 (2016).[3] Two of them (factor 2, repetitive and compulsive behavior, and factor 32, sex offender treatment) depend on whether Doe committed sexual misconduct in 2005. If, after further analysis on remand, the examiner concludes that the 2005 hearsay was reliable, then those two factors appear to

_____

[3] Hereinafter we refer to the classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of 803 Code Mass. Regs. § 1.33.

6

have been permissibly applied.  And we are unpersuaded by Doe's claims regarding factor 33 (home situation and support systems).  We conclude, however, that errors or potential errors in applying four other factors should be addressed on remand.

a.  <u>Factor 2</u>.  Based on her determination to credit Jane's allegations in the § 51B report, and on Doe's 2018 guilty pleas to sex offenses against a fourteen year old girl, the examiner applied factor 2.  "Factor 2 is applied when a sex offender engages in two or more separate episodes of sexual misconduct." Factor 2(a).  We are unpersuaded by Doe's argument that Jane's allegations, if treated as reliable, did not constitute evidence of sexual misconduct for factor 2 purposes.  Contrary to Doe's contentions, it was not essential to the application of factor 2 that Doe have had sexual contact with Jane, have abused her within the meaning of DCF regulations, or have committed indecent assault and battery or any other sex offense against her as defined in G. L. c. 6, § 178C.[4]  Nor was it essential that the examiner agreed with the § 51B investigator's conclusion

_____

[4] Doe also claims that, under the 2016 coding rules for scoring the Static-99R assessment of sex offender recidivism risk, the fact that he was not arrested or charged means the § 51B report has "no predictive value."  The cited passages of the coding rules say no such thing; instead, they discuss what should be considered a sex offense for scoring purposes.

7

that Doe's conduct toward Jane could be viewed as "grooming" behavior.[5]

Doe's conduct, if Jane's allegations are credited, could reasonably be viewed as motivated by his sexual desire, see Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 610 n.13 (2013).  It could also be viewed as misconduct, given that Jane was a fifteen year old girl under Doe's supervision at a residential facility for troubled teens. In short, the examiner could reasonably consider Doe to have engaged in sexual misconduct for factor 2 purposes.

b.  Factor 32.  Doe argues that the examiner erred in giving only moderate rather than full weight to factor 32.  The examiner did so because, despite Doe's "excellent" record in treatment from 2019 through the time of the 2022 hearing, it was

_____

[5] We do not view the examiner, or for that matter the § 51B investigator, to have used the term "grooming" in any specialized sense requiring expert evidence.  Rather, the word appears to have been used in a lay sense, to describe conduct aimed at preparing an un- or less-experienced person to engage in unfamiliar behavior or take on a new role.  Likewise, we do not understand the examiner's statement that Doe's behavior was "indicative of a potential deviant sexual interest in minor females" as involving any clinical judgment requiring expert evidence.  Under the board's factor 3(a) (adult offender with child victim), "[o]ffenders who target prepubescent children, generally younger than 13 years old, are more likely to have a deviant sexual interest and therefore, pose an even higher risk of reoffense and degree of dangerousness" (emphasis added). Although neither Jane nor Doe's 2018 victim was under thirteen years old, they were both children.  Doe has not challenged the examiner's application of factor 3 here.

8

"concerning" that, during that treatment, Doe had not revealed what the examiner concluded was his 2005 sexual misconduct. Doe argues that the examiner could not make this judgment without "specialized knowledge in treatment pedagogy," which he says she lacked.

What this overlooks is that the text of factor 32 embodies just such a judgment. Factor 32(a)(4) states, for adult men like Doe, that its weight may vary based on considerations such as:

> "4. Denial. One of the primary goals of successful sex offender treatment is accepting responsibility for engaging in harmful sexual offending behavior. While some individuals who deny committing their sex offense can benefit from treatment, their lack of responsibility or degree of minimization for their behaviors may diminish the weight assigned to factor 32."

If Jane's allegations of sexual misconduct were reliable, then the examiner could reasonably conclude that Doe's failure during treatment to take responsibility for that misconduct should diminish the weight to be given his sex offender treatment in assessing his risk of reoffense.

Doe also suggests that the record does not show that he failed to discuss his 2005 conduct during his sex offender treatment. Yet, during a comprehensive and lengthy assessment of his offending, his history, and his treatment, Doe mentioned only that at age twenty-four he had been fired from a kitchen job for "yell[ing] at the boss." Whether this was a disguised

9

referenced to his 2005 termination from the residential facility, or a reference to some other experience, is unclear. What is clear is that Doe points to nothing in the detailed assessment or in his other treatment records reflecting that he disclosed and grappled in treatment with his 2005 termination, or his history (aside from his 2018 offenses) of alleged sexual misconduct toward a young girl. The examiner could reasonably find that Doe had not discussed that conduct in treatment.

c. Factor 33. Doe argues that the examiner erred in giving only moderate rather than full weight to factor 33 (home situation and support systems). The examiner did so because, although Doe had many supportive friends and family who said they knew of his crimes, there was no evidence that they knew what those specific crimes were, nor did they state specifically how they would support his efforts toward rehabilitation upon release. The examiner's approach was permissible. Factor 33(a) calls for giving "greater mitigating consideration to evidence of a support network that is aware of the offender's sex offense history and provides guidance, supervision, and support of rehabilitation."

d. Factors 8 and 16. The board's brief concedes that the examiner misapplied factor 8 (use of weapon or violence or infliction of bodily injury) and factor 16 (public place) to

10

find that Doe posed a greater risk of reoffense and degree of dangerousness.

e.  Factor 9.  Doe argues that the examiner was inconsistent in applying factor 9 (alcohol and substance use) as a risk-aggravating factor.  At one point in her decision, the examiner gave factor 9 "minimal weight," but elsewhere she gave it "increased weight."  The board's brief does not explain this discrepancy.

f.  Factor 35.  Doe contends that the examiner misapplied factor 35 (psychological or psychiatric profiles indicating risk to reoffend) by giving Doe's scores on empirically based risk assessment instruments only "some weight to the extent they were correctly applied to the facts by a qualified provider."  Each of the three assessments arguably indicated that Doe posed something less than a high risk of reoffense, and Doe argues that the examiner lacked the specialized knowledge to question whether the assessments were correctly performed.  Indeed, the examiner pointed to nothing suggesting any problem with how those assessments were done in Doe's case, let alone articulating any basis for opining on how such problems might have affected the results.[6]  But we see a more basic problem:

---

[6] The examiner cited a statement, in the report on Doe's penile plethysmograph (PPG) assessment, that although Doe had shown "[a]rousal to appropriate stimuli," defined as adult women, he showed "no significant physiological arousal to

11

the examiner failed to state clearly whether she did reduce the weight given to these assessments on the ground that they were improperly conducted. We cannot provide effective judicial review where we are unsure what weight the examiner gave factor 35 and why she did so. The matter should be clarified on remand.

3. Disposition. The proper standard of review when an offender successfully challenges the application of a regulatory factor "is to ask whether the error may have affected the classification and, if so, to remand to [the board]. This best comports with our statutory mandate to determine whether 'the substantial rights of any party may have been prejudiced' (emphasis added)." Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 804 (2022) (Doe No. 22188), quoting G. L. c. 30A, § 14. Here, Doe has successfully challenged whether four factors were properly applied in classifying him as a level three offender, and the application of two others depends on the examiner's further analysis of the reliability of the 2005 allegations. Because

---

deviant stimuli," defined to include children and adolescents, and so his "data was not appropriate for statistical analysis of sexual preferences." It is unclear from this statement whether the PPG result's lack of utility for such statistical analysis calls into question its result that Doe was unaroused by children and adolescents. On remand, if the examiner relies on this statement as a ground for giving reduced weight to the PPG result, she should explain her basis for doing so.

12

the "examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor" and a number of factors are in play, we are unsure whether the examiner, even without regard to those four factors, would have given Doe a level three classification. Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014).  See Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 657 n.4 (2019); Doe No. 22188, supra at 802.

Conclusion.  The judgment affirming the board's decision is vacated.  The case is remanded to the Superior Court for entry of a new judgment vacating the decision and remanding the case to the board for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Desmond, Sacks & Brennan, JJ.[7]),

Clerk

Entered: June 5, 2025.

---

[7] The panelists are listed in order of seniority.

13