NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1388

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 523373

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe (Doe), appeals from a Superior Court judgment affirming his final classification by the Sex Offender Registry Board (SORB) as a level three sex offender. See G. L. c. 6, § 178K (2) (c).  On appeal, Doe claims that (1) the examiner improperly applied risk factors 11, 12, 13, and 28; (2) the hearing examiner (examiner) erroneously denied his motion for funds to secure an expert; and (3) the level three classification was not supported by substantial evidence.  We affirm.

Background.  We summarize the facts found by the hearing examiner, supplemented by additional undisputed facts from the record.  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex

<u>Offender Registry Bd</u>., 459 Mass. 603, 606 (2011) (<u>Doe No. 10800</u>).

On July 27, 2012, a forty year old woman (victim) reported that Doe sexually assaulted and beat her. Doe had approached the victim and asked if he could pay her for sex. The victim got into Doe's car, and they drove to a parking lot located off a major roadway where they agreed that she would perform oral sex for money. Doe paid her and she began to perform oral sex. When Doe inquired how much the victim charged for vaginal sex, they disagreed about the amount he would pay her. Doe climbed over the car's center console, then grabbed her hands, put them over her head, and pulled down her stockings and his pants. Doe "attempted to put his penis inside of her vagina" and "then penetrated her vagina with his fingers and then began to masturbate himself." The victim fled the vehicle, but Doe attempted to penetrate her vagina with his penis from behind. The victim yelled at Doe to stop, and he complied. The victim began walking away, and the next thing she remembered was being on the ground bleeding. She was later told that she was struck by a brick, which was taken as evidence and sent to the crime laboratory. The victim was treated at the hospital for a laceration on her face, two blackened eyes, several broken bones, and abrasions to her hands and both knees.

Following a trial in the Superior Court in January 2015, a jury convicted Doe of one count of rape, two counts of assault with intent to rape, and one count of assault and battery by means of a dangerous weapon causing serious bodily injury.

On or about February 25, 2020, SORB notified Doe that he had been preliminarily classified as a level three sex offender pursuant to G. L. c. 6, § 178K (2) (c). Doe challenged the classification recommendation and after a de novo hearing on April 14, 2021, the examiner issued a provisional decision on August 9, 2021, classifying Doe as a level three sex offender.[1] A hearing to update the record was held on December 13, 2021. On May 4, 2022, the examiner updated and finalized the classification decision and ordered Doe to register as a level three sex offender. Doe appealed from that decision to the Superior Court, where a judge denied his motion for judgment on the pleadings and affirmed the examiner's decision on August 2, 2024.

Discussion. We review de novo a judge's consideration of an agency decision. See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89

---

[1] The examiner allowed Doe's motion to hold the final classification decision as provisional and continue the hearing to a date closer to his release pursuant to Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 484 (2015).

(2019) (Doe No. 523391).  We "may set aside or modify SORB's classification decision" if we determine that it exceeds "SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501), citing G. L. c. 30A, § 14 (7).  We "give due weight to the experience, technical competence, and specialized knowledge of the agency."  Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 602 (2013), quoting G. L. c. 30A, § 14 (7).

1.  Challenges to factors.  a.  Factor 11 (violence unrelated to sexual assaults).  Doe contends that the examiner improperly applied factor 11 by considering Doe's property crimes[2] where factor 11 requires an analysis of the "severity and frequency of violence towards other persons or animals."  803 Code Mass. Regs. § 1.33(11) (2016).  Even if the examiner improperly considered the property offenses, there was no abuse of discretion in applying factor 11 because the examiner properly considered other offenses including witness

---

[2] The examiner listed malicious destruction of property, breaking and entering in the daytime with the intent to commit a felony, larceny, destruction of property, and breaking and entering in the nighttime with the intent to commit a felony.

4

intimidation, violation of an abuse prevention order,[3] and assault and battery. These offenses supported the examiner's finding that Doe "has previously demonstrated that he can act violently and with no regard for the safety of others."

b. Factor 12 (behavior while incarcerated or civilly committed). Doe concedes the applicability of factor 12 but challenges the examiner's finding that Doe's "inability to conform to the rules of the institutional setting [was] extremely concerning" on the basis that the examiner failed to acknowledge Doe's involvement in sex offender programming and "behavioral compliance" when considering factor 12. We conclude that the examiner's weighing of the evidence was not erroneous. See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 138-139 (2019) (Doe No. 23656) ("The hearing examiner has discretion to determine how much weight to ascribe to each factor under consideration"). Although Doe had two years without disciplinary issues leading up to his final classification, the evidence showed that in the

---

[3] The examiner properly considered the related July 2009 offenses, notwithstanding their resolution by continuance without a finding, based on a police report stating that Doe had verbally abused and threatened to kill his former girlfriend, who had had a restraining order against Doe, causing her to become "visibly shaken and . . . scared that he would get her if she talked to [police]." See Doe No. 10800, 459 Mass. at 638. We do not question the examiner's implicit determination not to credit Doe's testimony denying those allegations. Id. at 633.

previous five years, he received twelve disciplinary reports while incarcerated, including for the following: entering a restricted area; five infractions for possessing contraband; violating a departmental rule or regulation; six infractions for making or transferring intoxicants or possessing ingredients for making alcohol; unauthorized possession of an alcoholic or intoxicating beverage; and "refusing [a] direct order by staff."[4] The evidence supported the examiner's finding that "Doe's inability to conform to the rules of the institutional setting [was] extremely concerning" and that the risk-elevating factor fully applied to Doe's degree of dangerousness. See 803 Code Mass. Regs. § 1.33(12) (board may consider number of disciplinary reports, seriousness of violations, and length of time between sex offender's last report and release).

With respect to the sex offender treatment, the examiner credited and gave weight to Doe's progress in sex offender treatment under factor 32 (sex offender treatment).

c. Factor 13 (noncompliance with community supervision) and factor 28 (supervision by probation or parole). Doe contends that the examiner misapplied factor 13 by considering Doe's probation violations even though no evidence was presented

---

[4] On February 1, 2020, twenty gallons of "homebrew" were found in Doe's cell.

at the hearing specifying the seriousness of the violations, what conditions were violated, or the level of supervision. Doe also contends that the examiner abused her discretion by failing to consider evidence that Doe successfully completed probation five times between 2002 and 2012 without violation and successfully completed pretrial supervision on the governing offense. These arguments lack merit.

Doe's argument essentially expresses disagreement with the examiner's weighing of the evidence. Doe successfully completed probation and pretrial supervision, but he also violated his conditions of probation three times -- in 1997, 2009, and 2011. Furthermore, on July 27, 2012, just three days after successfully completing probation on a charge from September 2011, Doe, while intoxicated and high on cocaine, raped the victim in the governing offense. We discern no abuse of discretion in the examiner's weighing of the evidence. See Doe No. 23656, 483 Mass. at 138-139.

Similarly, we find unpersuasive Doe's contention that the examiner erred in applying factor 28 with moderate weight based on Doe's three probation violations without considering his "recent history of probation compliance." As Doe concedes, an examiner may give factor 28 less weight when the respondent has a history of probation violations. See 803 Code Mass. Regs.

7

§ 1.33(28)(a). When making a classification decision, a hearing examiner "has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor" (citation omitted). Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 96 Mass. App. Ct. 738, 742 (2019) (Doe No. 22188). The examiner did not err in considering Doe's probation violations in applying factor 28 with moderate weight.

2. Substantial evidence. Doe argues that the examiner's decision to classify Doe as a level three sex offender and the order to publicly disseminate his biographical information were arbitrary and capricious and not supported by substantial evidence. We disagree.

The evidence in the record supported the examiner's finding that the "brutality of the physical assault [Doe] inflicted against the [v]ictim with a brick caused notable injuries. This behavior is disturbing and speaks to [Doe's] dangerousness and impulsiveness." The examiner also properly found that Doe "continued to defy rules and regulations even while in the confines of a secure facility, which is further cause for concern." The examiner additionally found that she was compelled to consider Doe's "decades of lawless and criminal

8

behavior," which included approximately forty-seven charges between 1995 and 2012.

As discussed supra, the examiner carefully considered the relevant factors in detail, appropriately weighing the nine risk-elevating and four risk-mitigating factors[5] to support her finding that Doe presented a high risk of reoffense and degree of dangerousness and the active publication of Doe's registration information.  We conclude that there was substantial evidence to support the examiner's decision, and the examiner did not abuse her discretion.[6]

Doe also challenges the legitimacy of the factors, arguing inter alia that there is no guidance on how to apply or compare

_____

[5] In addition to factors 11, 12, and 13, discussed supra, the examiner applied six risk-elevating factors:  factor 7 (relationship between offender and victim) with increased weight; factor 8 (weapons, violence or infliction of bodily injury); factor 9 (alcohol and substance use); factor 10 (contact with criminal justice system); factor 16 (public place); and factor 19 (level of physical contact).

In addition to factor 28, discussed supra, the examiner applied three risk-mitigating factors:  factor 32 (sex offender treatment) with moderate weight; factor 33 (home situation and support systems) with full weight; and factor 34 (materials submitted by sex offender regarding stability in community) with moderate weight.

[6] We need not reach Doe's argument that his "liberty and privacy interests outweigh any interests the public has in accessing his biographical information" because Doe predicated that argument on his claim, addressed supra, that the examiner substantially relied on her misapplication of factors 11, 12, 13, and 28.

the factors, that some factors "are not validated as being correlated to risk," and that different examiners could reach different conclusions. Because Doe raises these claims for the first time on appeal, they are waived and we do not consider them. See Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 814 (2006).

3. Expert witness funds. On May 7, 2021, Doe sought funds for an expert with experience in conducting assessments of sexual recidivism and danger. The examiner denied Doe's motion for funds, finding that Doe "[had] not met his burden to show how the 2021 [Massachusetts Treatment Center] diagnosis of Antisocial Personality Disorder [was] related to the commission of the sex offense or sexual recidivism" and failed to provide sufficient evidence that he had a "condition that [was] particular to him that would warrant expert testimony." We find unavailing Doe's contention that the examiner erred in denying his motion for expert funds.

"[T]he decision whether to grant an individual sex offender funds for an expert is a discretionary one, to be based on the facts presented in an individual case." Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 775 (2008). Doe bore the burden to "identify a condition or circumstance special to [him] and explain how that condition

10

is connected to [his] risk of reoffense or level of dangerousness."  803 Code Mass. Regs. § 1.16(4)(a)(1) (2016). "We review the examiner's decision to deny a motion for expert funds for an abuse of discretion."  See Doe, Sex Offender Registry Bd. No. 58574 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 307, 310 (2020).

In support of Doe's motion for expert witness funds, the affidavit of Doe's counsel stated that Doe needed an expert to review the "Comprehensive Evaluation" (evaluation) dated January 22, 2021, that was conducted while Doe was at a sex offender treatment program at the Massachusetts Treatment Center (MTC). The affidavit stated that the MTC evaluation included an opinion that Doe met the diagnostic criteria for antisocial personality disorder (ASPD).  The conclusory assertion in the affidavit that "[w]hether someone suffers from [ASPD] is relevant to an offender's risk of reoffense and danger" failed to identify a nexus between the ASPD diagnosis and Doe's likelihood to reoffend or level of dangerousness.  See 803 Code Mass. Regs. § 1.16(4)(a)(1) (motion for funds must "explain how that condition is connected to [the offender's] risk of reoffense or level of dangerousness").

Additionally, while the motion and affidavit argued that the MTC evaluation's diagnosis of Doe's ASPD was "questionable"

11

because Doe did not have a confirmed diagnosis of a "conduct disorder" before the age of fifteen and his behavior instead may have been "attributable to his long history of alcohol and substance abuse," Doe did not submit any documentation or affidavits to verify those claims about his condition. See 803 Code Mass. Regs. § 1.16(4)(a)(3) (motion for funds must "include supporting documentation or affidavits verifying the specific condition or circumstances that the offender suffers from"). Given these defects, the examiner did not abuse her discretion in denying the motion for funds. See 803 Code Mass. Regs. § 1.16(4)(a) ("Any motion that fails to meet the criteria . . . may be denied prior to the hearing").[7] Moreover, the examiner

_____

[7] Doe further contends that the motion for funds should have been allowed so that expert testimony could help the examiner interpret the Static-99R and Stable-2007 results from October 2020, a few months after Doe began sex offender treatment, which were "arguably stale by the time the hearing examiner issued her May 2022 classification decision" since Doe made "significant advancements" in treatment after testing. This argument is without merit. In all cases, the relevance of a particular actuarial result will wane with the passage of time as new information supersedes old, but this is not a "circumstance special to [Doe]." 803 Code Mass. Regs. § 1.16(4)(a)(1). Rather, this premise for the motion was essentially a request for an "expert to provide a general opinion on the sex offender's risk to reoffend and degree of dangerous." 803 Code Mass. Regs. § 1.16(4)(b). As such, it was insufficient to warrant expert funds.

Although we agree with Doe that the examiner erroneously stated that Doe's combined test results placed him in the "high risk" range for sexual recidivism, we conclude that the error was harmless. In fact, Doe's composite results placed him in the "Well-Above Average Risk Level." This misstatement of the

12

placed little weight on the ASPD diagnosis in her decision.  She mentioned it just once in her decision, when discussing factor 35 (psychological or psychiatric profiles regarding risk to reoffend), listing it along with three other disorders for which Doe's treatment team found he met the criteria under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013).  The examiner did not mention the ASPD diagnosis anywhere else in her decision.  Even assuming error in the denial of Doe's motion for funds, on this record, we conclude that any such error was harmless.

<u>Judgment affirmed</u>.

By the Court (Blake, C.J., Meade & Tan, JJ.[8]),

Clerk

Entered:   June 12, 2026.

---

risk label was inconsequential because the mental health professional administering the tests did not testify at the classification hearing, and therefore the hearing examiner properly excluded the ultimate risk opinion from her consideration.

[8] The panelists are listed in order of seniority.